**EXHIBIT B**

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:                                                    :
                                                          :    Chapter 11
SIMPLEXITY, LLC, *et al.*,[1]                             :
                                                          :    Case No. 14-10569 (KG)
                    Debtors.                               :
                                                          :    Joint Administration Requested
                                                          :
                                                          :    **Ref. Docket No. _____**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN
POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH
COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE
PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11
U.S.C. §§ 361, 362, 363 AND 364 AND (III) SCHEDULING A FINAL HEARING**

Upon the motion (the "**Motion**"), dated March 17, 2014, of Simplexity LLC and its

affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**"), in

the above-captioned cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(c)(2),

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code,

11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local

Bankruptcy Rules for the District of Delaware (the "**Local Rules**"), seeking, among other

things:

    1) authorization for Simplexity, LLC (the "**Borrower**"), the obligations of

        which will be guaranteed jointly and severally by Simplexity Services,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Simplexity, LLC (9770); Simplexity Services, LLC (2823) (together with Simplexity, LLC, the "Simplexity Debtors"); and Adeptio INPC Holdings, LLC (4699) ("Adeptio"). The Simplexity Debtors' mailing address is 10790 Parkridge Blvd., Suite 200, Reston, VA 20191. Adeptio's mailing address is Cira Centre, 2929 Arch Street, Suite 1800, Philadelphia, PA 19104.

LLC and Adeptio INPC Holdings, LLC (the "**Guarantors**"), to obtain

post-petition financing from Adeptio Funding LLC (the "**DIP Lender**") up

to the aggregate principal amount of $500,000 plus capitalized expenses

and interest (the "**Financing**"), of which $$375,000 will be made available

pursuant to this Interim Order (the "**Interim Availability**") on the terms

and conditions set forth on Annex A hereto (the "**DIP Term Sheet**") and

this Order;

2) authorization for the Debtors to enter into the Financing and to perform

such other and further acts as may be required in connection with the

Financing;

3) authorization for the Debtors, upon entry of this Interim Order, to use

proceeds of the Financing in accordance with the budget set forth in Annex

B hereto, as such budget may be amended from time to time in accordance

with the DIP Term Sheet (the "**Budget**");

4) the granting of adequate protection to Fifth Third Bank (the "**Pre-Petition

Senior Secured Creditor**") and Adeptio Funding LLC, in its capacity as a

pre-petition junior secured lender (the "**Pre-Petition Junior Secured

Creditor**" and together with the Pre-Petition Senior Secured Creditor, the

"**Pre-Petition Secured Creditors**");

5) authorization for the Debtors to use cash collateral and all other collateral

in which the Pre-Petition Secured Creditors have an interest, and the

granting of adequate protection to the Pre-Petition Secured Creditors with

01:15153379.6

2

respect to, *inter alia*, such use of their cash collateral and all use and

diminution in the value of the Pre-Petition Collateral (as defined below);

6) the granting of a fully-perfected first priority senior priming security

interest in and lien upon all pre- and post-petition property of the Debtors,

subject to the Carve Out (as defined below), to secure the Debtors'

obligations to the DIP Lender;

7) the granting of superpriority claims to the DIP Lender payable from, and

having recourse to, all pre-petition and post-petition property of the

Debtors' estates and all proceeds thereof (including, upon entry of a final

order, any Avoidance Proceeds (as defined below)), subject to the Carve

Out; and

8) subject to entry of a final order, the limitation of the Debtors' right to

surcharge against collateral pursuant to section 506(c) of the Bankruptcy

Code.

Due and appropriate notice of the Motion having been served by the Debtors on: (a)

the United States Trustee; (b) the entities listed on the Consolidated List of Creditors

Holding the 25 Largest Unsecured Claims; (c) the Pre-Petition Secured Creditors.

The Court having considered and, to the extent not resolved, overruled any

objections to the Motion.

Upon the record made by the Debtors and after due deliberation and consideration

and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction.*  This Court has core jurisdiction over the Cases, the Motion,

and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

Venue appears to be proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice.*  The notice given by the Debtors of the Motion constitutes

appropriate, due and sufficient notice of the Motion under the circumstances and complies

with Bankruptcy Rule 4001(b) and (c) and the Local Rules, and no further notice of the

relief sought and granted herein is necessary or required.

3.      *Findings Regarding the Financing.*

(a)      Good cause has been shown for the entry of this Order.

(b)      The Debtors need to obtain access to the Interim Availability and

use cash collateral in order to permit, among other things, irreparable harm to the Debtors'

remaining business, the orderly sale of their businesses and assets and to satisfy other

working capital and operational needs.  The access of the Debtors to sufficient working

capital and liquidity through the use of cash collateral, incurrence of new indebtedness for

borrowed money and other financial accommodations is vital to the preservation and

maintenance of the value of the Debtors' estates for the benefit of its creditors and to a

successful sale of the Debtors' assets.

(c)      The Debtors believe they are unable to obtain financing on more

favorable terms from sources other than the DIP Lender and are unable to obtain adequate

unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an

administrative expense.  The Debtors also are unable to obtain secured credit allowable

under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the

Debtors granting to the DIP Lender, subject to the Carve Out as provided for herein, the

DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order.

(d)    The terms of the Financing and the use of cash collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The Financing contemplated by the DIP Term Sheet and the terms set forth in this Order were negotiated in good faith and at arms'-length between the Debtors and the DIP Lender, and the loans to be made under the Financing will be so extended in good faith and for valid business purposes and uses. The DIP Lender has acted fairly, reasonably and in good faith in connection with all aspects of the Financing. Any credit extended, loans made or funds advanced to the Borrower pursuant to the DIP Term Sheet, including, without limitation, all DIP Obligations incurred as a result thereof, shall be deemed to have been extended in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender is entitled to all of the protection and benefits of section 364(e) of the Bankruptcy Code.

4.    *Authorization of the Financing.*

(a)    The Borrower hereby is, authorized to borrow money up to the amount of the Interim Availability (plus interest, permitted expenses and other amounts provided for in the DIP Term Sheet) and the Guarantors hereby are authorized to guarantee the Financing on the terms set forth in the DIP Term Sheet.

(b)    In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents and shall pay all fees, that are provided for in the

DIP Term Sheet or that may be reasonably required or necessary for the Debtors'
performance of their obligations under the Financing.

(c)     All obligations of the Debtors to the DIP Lender, including fees and
expenses (as set forth in the DIP Term Sheet), shall constitute valid and binding obligations
of the Debtors (the "**DIP Obligations**"), enforceable against each Debtor party thereto in
accordance with this Interim Order and this Interim Order shall evidence the indebtedness
of the Borrower to the DIP Lender.  No obligation, payment, transfer or grant of security
under this Interim Order shall be stayed, restrained, voidable, or recoverable under the
Bankruptcy Code or under any applicable law (including without limitation, under section
502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or
counterclaim.  References in this Order to the Financing and the authorizations provided
herein shall also include the Financing as reflected in any credit agreement or note
evidencing the indebtedness of the Borrower and Guarantors requested by the DIP Lender,
as provided for in the DIP Term Sheet.

5.     *Superpriority Claims.*

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP
Obligations shall constitute allowed claims against the Debtors (without the need to file
any proof of claim) with priority over any and all administrative expenses, diminution
claims and all other claims against the Debtors, now existing or hereafter arising, of any
kind whatsoever, including, without limitation, all administrative expenses of the kind
specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all
administrative expenses or other claims arising under sections 105, 326, 328, 330, 331,
503(b), 506(c) (subject to entry of a final order), 507(a), 507(b), 726, 1113 or 1114 of the

Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent specifically provided for herein (collectively, the "**Superpriority Claims**").

(b)     For purposes hereof, the "**Carve Out**" means (i) all fees and interest required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not exceeding $10,000 and (iii) any and all allowed and unpaid claims of any professional of the Debtors or the statutory committee of unsecured creditors appointed in these Cases whose retention is approved by the Bankruptcy Court during the Cases pursuant to sections 327 and 1103 of the Bankruptcy Code for unpaid fees and expenses (A) prior to the occurrence of an Event of Default (as defined in the DIP Term Sheet) to the extent included in the Budget and (B) at any time after the occurrence and during the continuance of an Event of Default in an aggregate amount not exceeding $50,000, *provided* that the dollar limitation in this clause (iii) on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked or by any fees, expenses, indemnities or other amounts paid to the DIP Lender or any of the foregoing's respective attorneys, advisors and agents.

6.    *DIP Liens.*

The following is granted as security for the DIP Obligations, effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "**Collateral**"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests granted to the DIP Lender the "**DIP Liens**"):

(a)    First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the petition date or thereafter acquired, that, on or as of the petition date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including without limitation, all cash and cash collateral of the Debtors and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the petition date contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds, product, offspring or profits of all the foregoing.  Unencumbered Property shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy

Code, other than pursuant to section 549 of the Bankruptcy Code (collectively,

"**Avoidance Actions**") or any cash proceeds recovered pursuant to any successful

Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance**

**Proceeds**"); *provided, however* that subject to entry of a final order, the Superpriority

Claims in respect of the DIP Obligations may be satisfied from any assets of any Debtors'

estate, including any such Avoidance Proceeds, subject to the Carve Out.

        (b)      <u>Liens Priming Pre-Petition Secured Creditors' Liens</u>. Pursuant to

section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable,

fully-perfected first priority senior priming security interest in and lien upon all pre- and

post-petition property of the Debtors (including, without limitation, cash collateral,

inventory, accounts receivable, other rights to payment whether arising before or after the

petition date, contracts, properties, plants, equipment, general intangibles, documents,

instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade

names, other intellectual property, capital stock of subsidiaries and the proceeds, product,

offspring or profits of all the foregoing). Such security interests and liens shall be senior in

all respects to the interests in such property of the Pre-Petition Secured Creditors arising

from current and future liens of any of the Pre-Petition Secured Creditors (including,

without limitation, adequate protection liens granted hereunder).

        (c)      <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3)

of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security

interest in and lien upon all pre- and post-petition property of the Debtors (other than the

property described in clauses (a) or (b) of this paragraph, as to which the liens and security

interests in favor of the DIP Lender will be as described in such clauses), whether now

existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date, or to any valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Senior Replacement Liens and the Junior Replacement Liens), which security interests and liens in favor of the DIP Agent are junior to such valid, perfected and unavoidable liens.

(d)    DIP Lien Priority. Except as expressly set forth herein, the DIP Liens shall not be subordinated or made subject to or pari passu with any lien or security interest by any order of this Court heretofore or hereafter entered in the Case, whether pursuant to sections 105, 364(d) or 510 of the Bankruptcy Code, or otherwise, and shall be valid, perfected and enforceable against the Debtors, their estates and the Collateral, any trustee appointed in the Cases, any trustee appointed upon the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code or in any other proceedings superseding the Cases or such chapter 7 case (any such chapter 7 cases or superseding proceedings, "Successor Cases"), and/or upon the dismissal of the Cases.  Each of the Debtors agree on behalf of itself and its bankruptcy estate, that for so long as the DIP Obligations shall be outstanding, other than as expressly set forth in this Order or the DIP Term Sheet, it shall not, and it irrevocably waives any right (whether pursuant to sections 105, 364(c) or 364(d) of the Bankruptcy Code or otherwise) to, (i) grant or confer, or request the Court to grant or confer, any lien on all or any portion of the DIP Collateral that is pari passu with or senior in priority to the DIP Liens or (ii) grant or confer, or request the Court to grant or confer, any claim that is pari passu with or senior in priority to the Superiority Claim of the DIP

Lender. Each of the Debtors agree that except as expressly set forth in this Order, it shall take no action in the Case to cause the DIP Liens and Superpriority Claim of the DIP Lender to be subordinated or made subject to or pari passu with any lien, security interest or claim by any order of the Court heretofore or hereafter entered in the Case, whether pursuant to sections 105,364(c), 364(d) or 510 of the Bankruptcy Code or otherwise.

(e)    <u>Section 551 Protection</u>. The DIP Liens shall not be subject or junior to any lien or security interest that is avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, or any lien void under section 506(d) of the Bankruptcy Code, that is preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

7.    *Protection of DIP Lender's Rights.*

(a)    So long as there are any DIP Obligations or other amounts outstanding, Pre-Petition Secured Creditors shall have no right to and take no action to foreclose upon or recover in connection with the liens granted thereto, or otherwise seek to exercise or exercise any enforcement rights or remedies against any Collateral, without further order of this Court.

(b)    Without the need for further application or motion to, or further order of, this Court, all DIP Obligations shall be immediately due and payable on the Maturity Date. Upon the occurrence of the Maturity Date or after an Event of Default, the DIP Lender shall have the rights of a secured party to exercise rights and remedies against the Borrower, Guarantor, and the Collateral to the extent permitted under the Bankruptcy Code and applicable law, subject to the Carve Out. No failure or delay by the DIP Lender with respect to the exercise of any right, power, privilege or remedy under the DIP Term

Sheet, the Bankruptcy Code or applicable law shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy.

(c)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence of an Event of Default and the giving of five calendar days prior written notice to the Debtors (with a copy to counsel for each committee appointed under section 1102 of the Bankruptcy Code, the United States Trustee and counsel for the Pre-Petition Secured Creditor).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing.

8.    *Limitation on Charging Expenses Against Collateral.*  Subject to entry of a final order and except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by DIP Lender.

9.    *Cash Collateral.*  The Collateral includes cash collateral within the meaning of section 363(a) of the Bankruptcy Code.

10.    *Use of Cash Collateral.*  The Debtors are hereby authorized to use cash collateral pursuant to, and solely in the aggregate amount set forth in, the Budget.

11.    *Adequate Protection.* As adequate protection against diminution in value of the Collateral, the Pre-Petition Secured Creditors shall have the following liens and claims pursuant to this Interim Order:

(a)    Pre-Petition Senior Secured Creditor Adequate Protection Liens. Pursuant to Bankruptcy Code sections 361, 363(e) and 364(d), as adequate protection of the interests of the Pre-Petition Senior Secured Creditor in the Pre-Petition Collateral against any diminution in value of such interests in the Pre-Petition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the Postpetition Liens, (iii) the Debtors' use of cash and other Pre-Petition Collateral, and (iv) the imposition of the automatic stay, the Debtors will grant to the Prepetition Agent on behalf of the Pre-Petition Senior Secured Creditor, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the Collateral (the "**Senior Replacement Liens**"). The Senior Replacement Liens shall be junior in priority only to: (i) DIP Liens and (ii) the Carve-Out. The Senior Replacement Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral.

(b)    Pre-Petition Junior Secured Creditor Adequate Protection Liens. Pursuant to Bankruptcy Code sections 361, 363(e) and 364(d), as adequate protection of the interests of the Pre-Petition Junior Secured Creditor in the Pre-Petition Collateral against any diminution in value of such interests in the Pre-Petition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the Postpetition Liens, (iii) the Debtors' use of cash and other Pre-Petition Collateral, and (iv) the imposition of the automatic stay, the Debtors will grant to the

Pre-Petition Junior Secured Creditor, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the Collateral (the "**Junior Replacement Liens**"). The Junior Replacement Liens shall be junior in priority only to: (i) DIP Liens; (ii) the Carve-Out; (iii) the Pre-Petition Senior Secured Creditor's Liens on the Pre-Petition Collateral, and (iv) the Senior Replacement Liens. The Junior Replacement Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    Senior Adequate Protection Priority Claim. As further adequate protection of the interests of the Pre-Petition Senior Secured Creditor in the Pre-Petition Collateral against any diminution in value of such interests in the Pre-Petition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the DIP Liens, (iii) the Debtors' use of cash collateral and other Pre-Petition Collateral, and (iv) the imposition of the automatic stay, the Pre-Petition Senior Secured Creditor will be granted as and to the extent provided by Bankruptcy Code section 507(b) an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Case (the "**Senior Adequate Protection Priority Claim**"). Except as set forth in the Interim Order, the Senior Adequate Protection Priority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of a final order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114; provided, however, that the Senior Adequate Protection Priority Claim shall be junior in priority to the Superpriority Claim of the DIP Lender and

the Carve-Out; provided further however, that the Senior Adequate Protection Priority

Claim shall not recover from Avoidance Actions or Avoidance Proceeds, absent final order

of this Court.

        (d)    <u>Junior Adequate Protection Priority Claim</u>. As further adequate

protection of the interests of the Pre-Petition Junior Secured Creditor in the Pre-Petition

Collateral against any diminution in value of such interests in the Pre-Petition Collateral on

account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market

value, (ii) the granting of the DIP Liens, (iii) the Debtors' use of cash collateral and other

Pre-Petition Collateral, and (iv) the imposition of the automatic stay, the Pre-Petition

Junior Secured Creditor will be granted as and to the extent provided by Bankruptcy Code

section 507(b) an allowed superpriority administrative expense claim in the Chapter 11

Cases and any Successor Case (the "**Junior Adequate Protection Priority Claim**").

Except as set forth in the Interim Order, the Junior Adequate Protection Priority Claim

shall have priority over all administrative expense claims and unsecured claims against the

Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever,

including, without limitation, administrative expenses of the kinds specified in or ordered

pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c)

(subject to entry of a final order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent

permitted by law), 1113 and 1114; provided, however, that the Junior Adequate Protection

Priority Claim shall be junior in priority to the Senior Adequate Protection Priority Claim,

Superpriority Claim of the DIP Lender and the Carve-Out; provided further however, that

the Junior Adequate Protection Priority Claim shall not recover from Avoidance Actions or

Avoidance Proceeds, absent final order of this Court.

12.     *Survival of DIP Lender's Rights.* All rights and remedies of the DIP Lender

granted by this Order shall survive, and shall not be modified, impaired or discharged

by the entry of an order converting any of the Cases to a case under chapter 7, dismissing

any of the Cases, terminating the joint administration of these Cases or by any other act or

omission.

13.     *Limitation on Use of Financing Proceeds and Collateral.* Notwithstanding

anything herein or in any other order by this Court to the contrary, no borrowings,

Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the

validity, perfection, priority, extent or enforceability of any amount due to the DIP Lender

on account of the Financing, the DIP Liens or the pre-petition junior secured debt,

(b) investigate, assert any claims and defenses or causes of action against the DIP Lender

or its respective agents, affiliates, representatives, attorneys or advisors (in connection with

its capacity as DIP Lender or Pre-Petition Junior Secured Creditor); provided however, that

up to $5,000 may be used by any official committee solely for investigation, (c) prevent,

hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the

cash collateral or the Collateral in accordance with this Order, (d) seek to modify any of the

rights granted to the DIP Lender hereunder, in each of the foregoing cases without such

applicable parties' prior written consent or (e) pay any amount on account of any claims

arising prior to the Petition Date unless such payments are approved by the DIP Lender in

its sole discretion.

14.     *Indemnification, Waiver and Release.* For the avoidance of doubt, the

provisions of this paragraph apply to the DIP Lender solely in its capacity as such and all

other parties solely in the capacity of their relationship to the DIP Lender and the provision

of the DIP Loans. The Debtors are authorized to and shall jointly and severally indemnify and holds harmless the DIP Lender and its respective affiliates and their respective directors, officers, employees, advisors, agents and other representatives on the terms set forth in the Term Sheet. Each of the Debtors shall be deemed fully, forever and irrevocably to have waived and released any and all "claims" (as such term is defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff rights and recoupment rights against the DIP Lender, in its capacity as such, whether arising at law or in equity, relating to and/or otherwise in connection with the Financing, the Debtor, the Debtor's assets and the Cases, including, without limitation, any recharacterization, subordination, avoidance or other claim or defense arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, except to the extent any such claims, counterclaims, causes of action, defenses, setoff rights or recoupment rights relate to the DIP Lender's failure to comply with the terms of the Financing.

15.      *Section 552.* Subject to entry of a final order, the DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender with respect to proceeds, product, offspring or profits of any of the Collateral.

16.      *Binding Effect; Successors and Assigns.* This Order, including all findings herein, shall be binding upon all parties in interest in these Cases (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors); *provided, however,* that the DIP Lender shall have no obligation to extend any financing to

the Borrower following the filing of a motion or other document seeking to convert or converting the case to a chapter 7 or seeking to appoint or appointing a trustee or examiner with enlarged powers relating to the operation of the business.

17.    *No Marshaling*. The DIP Lender shall be entitled to apply the payments received pursuant to the DIP Term Sheet and the proceeds of the Collateral in accordance with the provisions of the DIP Term Sheet and in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of such payments, proceeds or the Collateral.

18.    *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure (which, to the extent applicable are waived), this Interim Order shall be immediately effective and enforceable upon its entry *nunc pro tunc* to the Petition Date and there shall be no stay of execution or effectiveness of this Order.

19.    *Retention of Jurisdiction*. The Bankruptcy Court has and will retain jurisdiction to hear and adjudicate any dispute, action or proceeding with respect to the Financing and this Order.

20.    *Final Hearing.*  The Court shall conduct a final hearing on the Motion on

_____ at _____ .m.  Objections to the Motion shall be made in writing, filed with the

Bankruptcy Court and served so as to be received on or before _____ at 4:00 p.m.

ET.

Dated:    Wilmington, Delaware
              _____, 2014

                                  _____
                                    Kevin Gross
                                    United States Bankruptcy Judge

## Annex A

### Debtor in Possession Financing

This Debtor-in-Possession Financing Term Sheet (the "DIP Term Sheet") summarizes the terms of a loan between DIP Lender and Borrower. This DIP Term Sheet is intended to be binding agreement, subject to entry of an Order approving the DIP Term Sheet and Financing in a form acceptable to DIP Lender. Given the exigency of the circumstances, the short-term nature of the Financing, and the relatively small amount of money involved, the DIP Lender and Borrower do not, at this time, intend to document the Financing with a formal credit agreement. However, Borrower will execute a credit agreement reflecting the terms set out below and other customary terms reasonably requested by DIP Lender or note evidencing the debt as and when requested by DIP Lender.

| | |
|---|---|
| Borrower | Simplexity, LLC, a Delaware limited liability company |
| Guarantors | Simplexity Services, LLC and Adeptio INPC Holdings, LLC, each of which are Delaware limited liability companies. The guarantors fully guarantee as primary obligors on a joint and several basis the performance by the Borrower of all its obligations hereunder and under the Order, including all payment obligations, and waive any and all defenses to any obligations under such guarantee, to the extent permitted under law. |
| DIP Lender | Adeptio Funding LLC, a Delaware limited liability company |
| Delayed Draw Term Loan Maximum Amount | $500,000 plus the amount of any interest or Permitted Expenses that are added to the principal amount of the loan (as provided below). |
| Purpose | Finance necessary expenses and professional fees pursuant to the Agreed Budget as determined by the DIP Lender in its sole discretion in furtherance of an orderly sale of Simplexity's businesses and assets for the minimum time necessary to obtain long-term DIP financing or consummate a sale of Simplexity's business and assets for the benefit of its creditors. |
| Agreed Budget | The budget attached as Annex B to the Order, with such changes as may be approved by the DIP Lender in its sole discretion. |
| Maturity Date: | All amounts outstanding (including accrued and unpaid interest and any interest or Permitted Expenses added to the principal amount of the loan) shall be paid in full on the date 45 days from the Petition Date. |
| Events of Default | Events of Default are: 1. Non-Payment. Failure to repay the Delayed Draw Term Loan Amount and accrued and unpaid interest and expenses on the Maturity Date or to make any mandatory prepayment when due; 2. Breach. The Borrower or any Guarantor fails to comply with |

any of its other obligations hereunder or under the Order, including the Affirmative or Negative Covenants set forth herein.

3. <u>Inconsistent Action</u>. Any indirect or direct action by the Debtors or the occurrence of any event or circumstance that: (i) is inconsistent with the Order or this DIP Term Sheet, (ii) has had or could have a materially adverse effect on the Debtors or the operations, revenues, assets or liabilities of the Debtors, or the rights of the DIP Lender hereunder or under the Order or (iii) is an incurrence of any debt or liens on the Debtors' property, is a sale of assets outside the ordinary course of business, or is an incurrence of liabilities that exceed $25,000 in the aggregate not set forth in the Agreed Budget ;

4. <u>Failure to Fund According to Budget</u>. Failure of the Debtors to fund operations in accordance with the Agreed Budget;

5. <u>Change of Control</u>. Any person or two or more persons acting in concert shall have acquired beneficial ownership or control of voting stock of any Debtor representing 35% or more of the combined voting interests in such Debtor;

6. <u>Dismissal or Conversion of Cases</u>. (i) Any of the Debtors cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal of any Case of any Debtor, or (ii) a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business shall be appointed in any of the Cases of the Debtors;

7. <u>Relief from Automatic Stay</u>. The Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to the holder or holders of any security interest to: (i) permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any of any Debtor or (ii) permit other actions that would have a material adverse effect on any Debtor;

8. <u>Certain Orders</u>. (i) The order approving the DIP Loan is amended, modified, appealed, or is no longer in full force and effect, (ii) the final order approving the Financing (in form and substance satisfactory to the DIP Lender) shall not have been entered by the date that is 30 days after the date hereof, (iii) an order of the bankruptcy court shall be entered denying or terminating use of cash collateral, (iv) the interim order or final order shall cease to create a valid and perfected Lien on the Collateral or to be in full force and effect, (v) any of the Debtors fail to comply with any order of the bankruptcy court, or (vi) a final non-appealable order in the Debtors cases shall

| | |
|---|---|
| | be entered charging any of the Collateral under Section 506(c) of the Bankruptcy Code; and<br>9. <u>Pre-Petition Payments</u>. Except as permitted by the first day orders and the Agreed Budget, any Debtor shall make any payment on account of any pre-petition liability.<br><br>Following the occurrence of any Event of Default, the DIP Lender shall have the right (1) by notice to the Borrower to demand payment in full of all amounts outstanding (including accrued and unpaid interest and any Permitted Expenses added to the principal amount of the loan), and Borrower shall pay any such amounts upon such demand and (2) to exercise remedies with respect to the Collateral, subject to the terms of the DIP Order. |
| Security | Subject only to the Carve Out, a fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors. |
| Interest Rate (paid in kind): | 10% of the outstanding principal amount per annum, calculated as .02777% per day. DIP Lender shall capitalize and add interest to the principal amount of the DIP Loan. Lender shall record such capitalized interest on the Schedule of Borrowing. |
| Post-petition Loan Availability | If the Debtors do not have cash on hand sufficient to satisfy five business days of reasonably anticipated expenses, advances under the Loan will be made available pursuant to the Agreed Budget set forth in Annex B. The Debtor is authorized to draw the amount necessary to satisfy 5 business days of reasonably anticipated net expenses one time per week, provided DIP Lender will fund only if: (i) the Debtor provides evidence satisfactory to the DIP Lender that the requested amount does not exceed the difference between reasonably anticipated receipts and disbursements for the next five business days, (ii) the Debtor delivers an updated budget acceptable to the DIP Lender, which includes uses for the requested draw (which, upon approval by the DIP Lender shall amend and replace the Agreed Budget set forth on Annex B), and (iii) the total amount funded, including the requested draw, is equal to or less than Delayed Draw Term Loan Maximum Amount. The Borrower shall deliver a borrowing request to the DIP Lender at least two business days prior to the proposed date of drawing setting for the amount proposed to be borrowed and the other information provided for herein. |
| Schedule of Borrowing | Lender shall maintain a schedule of drawings, payments, capitalized interest and expenses, and any accrued and unpaid not yet capitalized (the "**Schedule of Borrowing**") and absent manifest error such schedule will be conclusive evidence of amounts owing. |
| Voluntary Prepayment | The Debtors may voluntarily prepay the DIP Loan, in full but not in part, at any time without premium or penalty. Prepayment in |

|  | full means prepayment of all amounts on the Schedule of Borrowings which shall include principal (including interest and expenses added to principal), any accrued and unpaid interest to the prepayment date plus expenses accrued and unpaid to the prepayment date. Upon prepayment in full of all outstanding amounts under the DIP Loan, the DIP Lender's obligations hereunder shall terminate. Amounts repaid may not be reborrowed. |
|---|---|
| Mandatory Prepayment | Unless the DIP lender otherwise agrees in writing, the DIP Loan shall be prepaid with 100% of the net cash proceeds of the sale of any of property of the Debtors and 100% of Qualified Funds received by the Debtor. Upon prepayment in full of all outstanding amounts under the DIP Loan, the DIP Lender's obligations hereunder shall terminate. |
| Qualified Funds | Weekly gross receipts in excess of the amount forecasted in the Budget and 100% of all gross receipts in excess of $100,000 in any five business day period. |
| Conditions Precedent | The DIP Lender's obligations to make any loans shall be subject to the following conditions precedent: (i) entry of the Order in form and substance satisfactory to DIP Lender in its sole discretion, (ii) delivery of a borrowing request meeting the requirements set forth hereunder, (iii) no Event of Default occurred and no event or circumstance has occurred or exists that the DIP Lender reasonably believes will result in an Event of Default, and (iv) the DIP Lender shall have received other closing documents reasonably requested by the DIP Lender. |
| Reports | Borrower will provide DIP Lender access to all books and records of the Debtors, as well as unrestricted access to Debtors' financial advisor, professionals or employees. |
| Affirmative Covenants | Financing proceeds shall be maintained in a bank account at a financial institution acceptable to the DIP Lender. Debtors shall make commercially reasonable efforts to deposit cash collateral in a bank account at a financial institution acceptable to the DIP Lender. |
| Negative Covenants: | Debtors shall not make any payments to any person or incur any obligations without DIP Lender's written consent. Absent the DIP Lender's written consent or order of the Court, Debtors shall not sell any property unless cash proceeds are sufficient to prepay the DIP Loans in full. |
| Permitted Expenses (paid in kind) | The Borrower shall reimburse the DIP Lender for all reasonable and documented costs and expenses, including legal fees, in connection with the negotiation, documentation, execution, and administration of the Financing. DIP Lender shall capitalize and add such expenses to the principal amount of the DIP Loan. Lender shall record such capitalized expenses on the Schedule of Borrowing. |
| Indemnification | Debtors indemnify and holds harmless the DIP Lender and its |

| | |
|---|---|
| | respective affiliates and their respective directors, officers, employees, advisors, agents and other representatives, each solely in their capacity as related to the DIP Lender and the DIP Loans (each, an "**Indemnified Person**") from and against any and all losses, claims, damages and liabilities to which any such Indemnified Person may become subject arising out of or in connection with the Financing, the use of the proceeds thereof or any claim, litigation, investigation or proceeding (a "**Proceeding**") relating to any of the foregoing, regardless of whether any indemnified person is a party thereto, regardless of who brings the Proceeding. The Debtors agree to reimburse each indemnified person upon demand for any reasonable legal or other out-of-pocket expenses incurred in connection with investigating or defending any of the foregoing. DIP Lender is authorized to advance from the DIP Loan an amount equal to such amount. However, the foregoing indemnity will not, as to any Indemnified Person, apply to losses, claims, damages, liabilities or related expenses to the extent they are found by a final, nonappealable judgment of a court of competent jurisdiction to arise from the willful misconduct of the Indemnified Person. |
| Governing Law | State of New York (and, to the extent applicable, the Bankruptcy Code). |

This Debtor-in-Possession Financing Term Sheet evidences debt of the Borrower and is executed and agreed on March ___, 2014

**Borrowers**

_____
Simplexity, LLC
as debtors and debtors in possession
By:
Title:

**Guarantors**

_____
Simplexity Services, LLC
as debtors and debtors in possession
By:
Title:

_____
Adeptio INPC Holdings, LLC
as debtors and debtors in possession
By:
Title:

**DIP Lender**

_____
Adeptio Funding LLC
By:
Title:

## Annex B

## Budget

The Budget is intended to fund the minimum necessary expenses and professional fees, as determined by the DIP Lender in its sole discretion, in furtherance of an orderly sale of Simplexity's businesses for the minimum time necessary to obtain long-term DIP financing or consummate a sale of Simplexity's business lines.

DRAFT - SUBJECT TO REVIEW

Simplexity LLC and Simplexity Services LLC

**DIP Budget**

US$ in '000s

| | Week # 1 | 2 | 3 | 4 | 5 | 6 | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Ending | 23-Mar | 30-Mar | 6-Apr | 13-Apr | 20-Apr | 27-Apr | TOTAL |
| Begin Cash Balance | - | - | - | 110,396 | 36,031 | - | - |
| | | | | | | | |
| Operating Cash Flows | | | | | | | |
| Operating Receipts (MDP collections) | 44,346 | 44,346 | 44,346 | 44,346 | 44,346 | 44,346 | 266,075 |
| AR Collections / Sale of Inventory | - | - | 400,000 | 83,000 | - | - | 483,000 |
| Total Collections | 44,346 | 44,346 | 444,346 | 127,346 | 44,346 | 44,346 | 749,075 |
| Operating Disbursements | | | | | | | |
| Personnel | (110,300) | (72,800) | (110,300) | (72,800) | (72,800) | (72,800) | (511,800) |
| Utilities | | | | (41,750) | | | (41,750) |
| Telecomm / Equipment Leases | | | | (37,161) | | | (37,161) |
| Rent | | | (108,793) | | | | (108,793) |
| License Fees | | | | | | | - |
| Hosting | | | (89,857) | | | | (89,857) |
| Total Operating Disbursements | (110,300) | (72,800) | (308,950) | (151,711) | (72,800) | (72,800) | (789,361) |
| | | | | | | | |
| Bankruptcy & Restructure Costs | | | | | | | |
| Deposits | | (20,000) | | | | | (20,000) |
| Debtors' counsel | (75,000) | (25,000) | (25,000) | (25,000) | (25,000) | | (175,000) |
| UCC counsel | | | | (25,000) | | (25,000) | (50,000) |
| Claims Agent | | | | | | (20,000) | (20,000) |
| UST Fees | | | | | | (13,650) | (13,650) |
| Total Bnkr. & Restr. Disbursements | (75,000) | (45,000) | (25,000) | (50,000) | (25,000) | (58,650) | (278,650) |
| Total Disbursements | (185,300) | (117,800) | (333,950) | (201,711) | (97,800) | (131,450) | (1,068,011) |
| | | | | | | | |
| Net Cash Flow before DIP | (140,954) | (73,454) | 110,396 | 36,031 | (17,423) | (87,104) | (172,510) |
| | | | | | | | |
| DIP Borrowing / (Payments) | 140,954 | 73,454 | - | - | 17,423 | 87,104 | 318,936 |
| | | | | | | | |
| Net cash inflow / (outflow) | (140,954) | (73,454) | 110,396 | 36,031 | (17,423) | (87,104) | (87,104) |
| Ending Cash balance | - | - | 110,396 | 36,031 | - | - | |
| | | | | | | | |
| DIP FACILITY ACTIVITY | | | | | | | |
| Beginning Balance | - | 140,954 | 214,408 | 214,408 | 214,408 | 231,832 | - |
| Net Borrowing / (Payment) | 140,954 | 73,454 | - | - | 17,423 | 87,104 | 231,832 |
| Capitalized Interest | | | | | | 2,560 | 2,560 |
| Capitalized Fees | | | | | | | |
| Ending Balance | 140,954 | 214,408 | 214,408 | 214,408 | 231,832 | 321,496 | 321,496 |
| | | | | | | | |
| DIP Commitment | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 |
| Availability | 359,046 | 285,592 | 285,592 | 285,592 | 268,168 | 181,064 | |