UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

**ORIGINAL**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| Simplexity, LLC, *et al.*,[1] | ) Case No. 14-10569 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket No. 14 |
| | ) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364 AND (III) SCHEDULING A FINAL HEARING**

Upon the motion (the "**Motion**")[2], dated March 17, 2014, of Simplexity LLC and

its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**"),

in the above-captioned cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(c)(2),

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code,

11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local

Bankruptcy Rules for the District of Delaware (the "**Local Rules**"), seeking, among other

things:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Simplexity, LLC (9770); Simplexity Services, LLC (2823); and Adeptio INPC Holdings, LLC (4699). The Debtors' mailing address is 10790 Parkridge Blvd., Suite 200, Reston, VA 20191.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to such terms in the Motion or the DIP Term Sheet.

1) authorization for Simplexity, LLC (the "**Borrower**"), the obligations of which will be guaranteed jointly and severally by Simplexity Services, LLC and Adeptio INPC Holdings, LLC (the "**Guarantors**"), to obtain post-petition financing from certain lenders (collectively, the "**DIP Lenders**") and Fifth Third Bank, in its capacity as agent for the DIP Lenders (the "**DIP Agent**") up to the aggregate principal amount (~~in no event to exceed $1,000,000~~) equal to $500,000, plus the aggregate amount of cash collateral collected during the term of the facility, plus capitalized expenses and interest (the "**Financing**"), of which not less than $375,000 will be made available pursuant to this Interim Order (the "**Interim Availability**") on the terms and conditions set forth on Annex A hereto (the "**DIP Term Sheet**") and this Order, *provided that the maximum principal amount of the Financing may not exceed $1,000,000 or, with the prior written consent of Fifth Third Bank and the Debtors, $1,100,000*

2) authorization for the Debtors to enter into the Financing and to perform such other and further acts as may be required in connection with the Financing;

3) authorization for the Debtors, upon entry of this Interim Order, to use proceeds of the Financing in accordance with the budget set forth in Annex B hereto, as such budget may be amended from time to time in accordance with the DIP Term Sheet (the "**Budget**");

4) the granting of adequate protection to Fifth Third Bank, in its capacity as agent (the "**Pre-Petition Senior Secured Agent**") for certain pre-petition senior secured lenders (collectively, the "**Pre-Petition Senior Secured Creditors**") and to Adeptio Funding LLC, in its capacity as a pre-petition

junior secured lender (the "**Pre-Petition Junior Secured Creditor**" and together with the Pre-Petition Senior Secured Agent and Pre-Petition Senior Secured Creditors, the "**Pre-Petition Secured Creditors**");

5) authorization for the Debtors to use cash collateral and all other collateral in which the Pre-Petition Secured Creditors have an interest, and the granting of adequate protection to the Pre-Petition Secured Creditors with respect to, *inter alia*, such use of their cash collateral and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

6) the granting of a fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors, subject to the Permitted Priority Liens (as defined below), to secure the Debtors' obligations to the DIP Agent and the DIP Lenders;

7) the granting of superpriority claims to the DIP Agent and the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof (including, upon entry of the Final Order, any Avoidance Proceeds (as defined below)), subject to the Carve Out; and

8) subject to entry of the Final Order, the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code.

Due and appropriate notice of the Motion having been served by the Debtors on: (a) the United States Trustee; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims; (c) the Pre-Petition Secured Creditors.

The Court having considered and, to the extent not resolved, overruled any objections to the Motion.

Upon the record made by the Debtors and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction.*  This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue appears to be proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice.*  The notice given by the Debtors of the Motion constitutes appropriate, due and sufficient notice of the Motion under the circumstances and complies with Bankruptcy Rule 4001(b) and (c) and the Local Rules, and no further notice of the relief sought and granted herein is necessary or required.

3.    *Findings Regarding the Financing.*

(a)    Good cause has been shown for the entry of this Order.

(b)    The Debtors need to obtain access to the Interim Availability and use cash collateral in order to permit, among other things, irreparable harm to the Debtors' remaining business, the orderly sale of their businesses and assets and to satisfy other working capital and operational needs.  The access of the Debtors to sufficient working capital and liquidity through the use of cash collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the value of the Debtors' estates for the benefit of its creditors and to a successful sale of the Debtors' assets.

(c)     The Debtors believe they are unable to obtain financing on more favorable terms from sources other than the DIP Agent and DIP Lenders and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Agent and DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order.

(d)     The terms of the Financing and the use of cash collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Financing contemplated by the DIP Term Sheet and the terms set forth in this Order were negotiated in good faith and at arms'-length between the Debtors and the DIP Agent and DIP Lenders, and the loans to be made under the Financing will be so extended in good faith and for valid business purposes and uses. The DIP Agent and DIP Lenders have acted fairly, reasonably and in good faith in connection with all aspects of the Financing. Any credit extended, loans made or funds advanced to the Borrower pursuant to the DIP Term Sheet, including, without limitation, all DIP Obligations incurred as a result thereof, shall be deemed to have been extended in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and DIP Lenders are entitled to all of the protection and benefits of section 364(e) of the Bankruptcy Code.

RLF1 10065183v.1

4.    *Authorization of the Financing.*

(a)    The Borrower hereby is, authorized to borrow money up to the amount of the Interim Availability (plus interest, permitted expenses and other amounts provided for in the DIP Term Sheet) and the Guarantors hereby are authorized to guarantee the Financing on the terms set forth in the DIP Term Sheet.

(b)    In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents and shall pay all fees, that are provided for in the DIP Term Sheet or that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing.

(c)    All obligations of the Debtors to the DIP Agent and DIP Lenders, including fees and expenses (as set forth in the DIP Term Sheet), shall constitute valid and binding obligations of the Debtors (the "**DIP Obligations**"), enforceable against each Debtor party thereto in accordance with this Interim Order and this Interim Order shall evidence the indebtedness of the Borrower to the DIP Agent and DIP Lenders.  No obligation, payment, transfer or grant of security under this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.  References in this Order to the Financing and the authorizations provided herein shall also include the Financing as reflected in any credit agreement or note evidencing the indebtedness of the Borrower and Guarantors requested by the DIP Agent or DIP Lenders, as provided for in the DIP Term Sheet.

RLF1 10065183v.1

5.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors (without the need to file any proof of claim) with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the Permitted Priority Liens to the extent specifically provided for herein (collectively, the "**Superpriority Claims**").

(b)    For purposes hereof, the "**Carve Out**" means (i) all fees and interest required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not exceeding $10,000 and (iii) any and all allowed and unpaid claims of any professional of the Debtors or the statutory committee of unsecured creditors appointed in these Cases whose retention is approved by the Bankruptcy Court during the Cases pursuant to sections 327 and 1103 of the Bankruptcy Code for unpaid fees and expenses (A) prior to the occurrence of an Event

of Default (as defined in the DIP Term Sheet) to the extent included in the Budget and (B) at any time after the occurrence and during the continuance of an Event of Default in an aggregate amount not exceeding $50,000, *provided* that the dollar limitation in this clause (iii) on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked or by any fees, expenses, indemnities or other amounts paid to the DIP Lender or any of the foregoing's respective attorneys, advisors and agents.  For purposes hereof, the "**Permitted Priority Liens** means, collectively (i) the Carve Out, (ii) the liens securing a principal amount equal to $15 million of Prepetition Secured Debt (plus all interest, fees, costs and other charges accrued thereon) due to the Pre-Petition Senior Secured Agent or Pre-Petition Senior Secured Lenders, and (iii) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (A) had priority under applicable law over the Prepetition Liens, (B) were not subordinated by agreement or applicable law, and (C) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date (provided that the relative priority of the Permitted ~~Prior~~ Priority Liens shall be subject to the terms of the Carveout as provided herein).

     6.    *DIP Liens*.

The following is granted as security for the DIP Obligations, effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents (all property identified in clauses (a), (b), and (c) below being collectively referred to as the

"**Collateral**"), subject only to the Permitted Priority Liens (all such liens and security interests granted to the DIP Lender the "**DIP Liens**"):

(a)    First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the petition date or thereafter acquired, that, on or as of the petition date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including without limitation, all cash and cash collateral of the Debtors and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the petition date contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds, product, offspring or profits of all the foregoing.  Unencumbered Property shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, other than pursuant to section 549 of the Bankruptcy Code (collectively, "**Avoidance Actions**") or any cash proceeds recovered pursuant to any successful Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**"); *provided, however* that subject to entry of the Final Order, the Superpriority Claims in respect of the DIP Obligations may be satisfied from any assets of any Debtors' estate, including any such Avoidance Proceeds.

9

(b)     Liens Priming Pre-Petition Secured Creditors' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the petition date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds, product, offspring or profits of all the foregoing).  Subject to the Permitted Priority Liens, such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Creditors arising from current and future liens of any of the Pre-Petition Secured Creditors (including, without limitation, adequate protection liens granted hereunder).

(c)     Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph, as to which the liens and security interests in favor of the DIP Agent and DIP Lenders will be as described in such clauses), whether now existing or hereafter acquired, that is subject to the Permitted Priority Liens and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and DIP Lenders are junior to such valid, perfected and unavoidable liens.

(d)    Lien Priority. Except as expressly set forth herein, the DIP Liens shall not be subordinated or made subject to or pari passu with any lien, security interest or claim by any order of this Court heretofore or hereafter entered in the Case, whether pursuant to sections 105, 364(d) or 510 of the Bankruptcy Code, or otherwise, and shall be valid, perfected and enforceable against the Debtors, their estates and the Collateral, any trustee appointed in the Cases, any trustee appointed upon the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code or in any other proceedings superseding the Cases or such chapter 7 case (any such chapter 7 cases or superseding proceedings, "**Successor Cases**"), and/or upon the dismissal of the Cases. Each of the Debtors agree on behalf of itself and its bankruptcy estate, that for so long as the DIP Obligations and Prepetition Secured Debt shall be outstanding, other than as expressly set forth in this Order or the DIP Term Sheet or as otherwise agreed to by DIP Agent or Pre-Petition Senior Secured Agent, as applicable, it shall not, and it irrevocably waives any right (whether pursuant to sections 105, 364(c) or 364(d) of the Bankruptcy Code or otherwise) to, (i) grant or confer, or request the Court to grant or confer, any lien on all or any portion of the DIP Collateral that is pari passu with or senior in priority to the DIP Liens, (ii) grant or confer, or request the Court to grant or confer, any claim that is pari passu with or senior in priority to the Superpriority Claim of the DIP Agent or DIP Lenders, (iii) grant or confer, or request the Court to grant or confer, any claim that is pari passu with or senior in priority to the Senior Replacement Liens, Senior Adequate Protection Priority Claims or liens securing the Prepetition Secured Debt. Each of the Debtors agree that except as expressly set forth in this Order, it shall take no action in the Case to cause the DIP Liens and Superpriority Claim of the DIP Lender to be subordinated or made subject to or pari passu

with any lien, security interest or claim by any order of the Court heretofore or hereafter entered in the Case, whether pursuant to sections 105,364(c), 364(d) or 510 of the Bankruptcy Code or otherwise.

(e)    Section 551 Protection. The DIP Liens shall not be subject or junior to any lien or security interest that is avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, or any lien void under section 506(d) of the Bankruptcy Code, that is preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code.

7.    *Protection of DIP Lender's Rights.*

(a)    Without the prior written consent of the DIP Agent, so long as there are any DIP Obligations or other amounts outstanding, Pre-Petition Secured Creditors shall have no right to and take no action to foreclose upon or recover in connection with the liens granted thereto, or otherwise seek to exercise or exercise any enforcement rights or remedies against any Collateral, without further order of this Court.

(b)    Without the need for further application or motion to, or further order of, this Court, all DIP Obligations shall be immediately due and payable on the Maturity Date. Upon the occurrence of the Maturity Date or after an Event of Default and after 5 days' prior written notice to the Debtors, the DIP Agent and DIP Lenders shall have the rights of a secured party to exercise rights and remedies against the Borrower, Guarantor, and the Collateral to the extent permitted under the Bankruptcy Code and applicable law, subject to the Carve Out.  No failure or delay by the DIP Lender with respect to the exercise of any right, power, privilege or remedy under the DIP Term Sheet, the Bankruptcy Code or applicable law shall operate as a waiver thereof, and the single or

partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy.

(c)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and DIP Lenders to exercise, upon the occurrence of an Event of Default and the giving of five calendar days prior written notice to the Debtors (with a copy to counsel for each committee appointed under section 1102 of the Bankruptcy Code, the United States Trustee and counsel for the Pre-Petition Secured Creditors).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing.

8.    *Limitation on Charging Expenses Against Collateral.*  Upon the entry of the Final Order, DIP Agent, DIP Lenders, Pre-Petition Senior Secured Agent and Pre-Petition Senior Secured Lenders and the Collateral shall not be subject to, and the Debtors (and any trustee) shall be deemed to have waived any rights, benefits or causes of action under, Bankruptcy Code § 506(c), the enhancement of collateral provisions of Code § 552, and any other similar legal or equitable doctrine (including, without limitation, unjust enrichment).

9.    *Cash Collateral.*  The Collateral includes cash collateral within the meaning of section 363(a) of the Bankruptcy Code.  Debtors shall deposit all cash collateral now or hereafter in their possession or control into a deposit account with Fifth Third Bank (or otherwise deliver such cash collateral to DIP Agent in a manner satisfactory to DIPAgent) promptly upon receipt thereof.

13

10.    *Use of Cash Collateral.* ~~All~~ Subject to the Debtors' compliance with the

other terms of this Interim Order, the DIP Term Sheet and any documentation evidencing

the DIP Obligations, upon the Debtors' receipt of the Financing, the Debtors shall be

deemed authorized to use cash collateral pursuant to, and solely in accordance with the

terms of this Order.  All cash collateral now or hereafter in DIP Agent's possession or

control shall be deemed to reduce principal amounts owed to the Pre-Petition Senior

Secured Creditor, and automatically deemed advanced to the Debtors as proceeds of the

Financing, to be used subject to an in accordance with this Order. *from the "capital operating cash flows" categories set forth in the Budget (whether or not in excess of the line items for such anticipated cash flows)*

*All other cash collateral shall be held by the Debtors pending further order of the Court or as may otherwise be agreed in writing by DIP Agent and Debtors*

11.    *Adequate Protection.*  As adequate protection against diminution in value of

the Collateral, the Pre-Petition Secured Creditors shall have the following liens and claims

pursuant to this Interim Order:

(a)    <u>Pre-Petition Senior Secured Agent and Pre-Petition Senior Secured</u>

<u>Creditors' Adequate Protection Liens</u>.  Pursuant to Bankruptcy Code sections 361, 363(e)

and 364(d), as adequate protection of the interests of the Pre-Petition Senior Secured Agent

and Pre-Petition Senior Secured Creditors in the Pre-Petition Collateral against any

diminution in value of such interests in the Pre-Petition Collateral on account of (i)

depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the

granting of the DIP Liens, (iii) the Debtors' use of cash and other Pre-Petition Collateral,

and (iv) the imposition of the automatic stay, the Debtors will grant to the Pre-Petition

Senior Secured Agent on behalf of the Pre-Petition Senior Secured Creditors, continuing

valid, binding, enforceable and perfected postpetition security interests in and liens on the

Collateral (the **"Senior Replacement Liens"**).  The Senior Replacement Liens shall be

junior in priority only to: (i) DIP Liens and (ii) the Permitted Priority Liens.  The Senior

Replacement Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral.

    (b)    <u>Pre-Petition Junior Secured Creditor Adequate Protection Liens</u>. Pursuant to Bankruptcy Code sections 361, 363(e) and 364(d), as adequate protection of the interests of the Pre-Petition Junior Secured Creditor in the Pre-Petition Collateral against any diminution in value of such interests in the Pre-Petition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the Postpetition Liens, (iii) the Debtors' use of cash and other Pre-Petition Collateral, and (iv) the imposition of the automatic stay, the Debtors will grant to the Pre-Petition Junior Secured Creditor, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the Collateral (the "**Junior Replacement Liens**"). The Junior Replacement Liens shall be junior in priority only to: (i) DIP Liens; (ii) the Permitted Priority Liens; (iii) the Pre-Petition Senior Secured Agent's and the Pre-Petition Senior Secured Creditors' Liens on the Pre-Petition Collateral, and (iv) the Senior Replacement Liens and will be subject to the terms of that certain Subordination Agreement dated as of April 3, 2013 by and between Pre-Petition Junior Secured Creditor and Pre-Petition Senior Secured Agent (as amended, supplemented or modified from time to time, the "**Subordination Agreement**"). The Junior Replacement Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral.

    (c)    <u>Senior Adequate Protection Priority Claim</u>. As further adequate protection of the interests of the Pre-Petition Senior Secured Agent and Pre-Petition Senior Secured Creditors in the Pre-Petition Collateral against any diminution in value of such interests in the Pre-Petition Collateral on account of (i) depreciation, physical deterioration,

use, sale, loss, or decline in market value, (ii) the granting of the DIP Liens, (iii) the Debtors' use of cash collateral and other Pre-Petition Collateral, and (iv) the imposition of the automatic stay, the Pre-Petition Senior Secured Creditor will be granted as and to the extent provided by Bankruptcy Code section 507(b) an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Case (the "**Senior Adequate Protection Priority Claim**").  Except as set forth in the Interim Order, the Senior Adequate Protection Priority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114; provided, however, that the Senior Adequate Protection Priority Claim shall not recover from Avoidance Actions or Avoidance Proceeds, absent entry of a Final Order providing otherwise.

      (d)    <u>Junior Adequate Protection Priority Claim</u>. As further adequate protection of the interests of the Pre-Petition Junior Secured Creditor in the Pre-Petition Collateral against any diminution in value of such interests in the Pre-Petition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the DIP Liens, (iii) the Debtors' use of cash collateral and other Pre-Petition Collateral, and (iv) the imposition of the automatic stay, the Pre-Petition Junior Secured Creditor will be granted as and to the extent provided by Bankruptcy Code section 507(b) an allowed superpriority administrative expense claim in the Chapter 11

Cases and any Successor Case (the "**Junior Adequate Protection Priority Claim**"). Except as set forth in the Interim Order, the Junior Adequate Protection Priority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114; provided, however, that the Junior Adequate Protection Priority Claim shall be junior in priority to the Senior Adequate Protection Priority Claim, Superpriority Claim of the DIP Lender and the Carve-Out and subject to the terms of the Subordination Agreement; provided further however, that the Junior Adequate Protection Priority Claim shall not recover from Avoidance Actions or Avoidance Proceeds, absent entry of a Final Order providing otherwise.

12.    *Survival of DIP Lender's Rights.* All rights and remedies of the DIP Agent and DIP Lenders granted by this Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission.

13.    *Limitation on Use of Financing Proceeds and Collateral.*  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due to the DIP Agent or DIP Lenders on account of the Financing, the DIP Liens, any amount due to the

Pre-Petition Senior Secured Agent or Pre-Petition Senior Secured Lenders on account of the Prepetition Secured Debt, or the liens securing the Prepetition Secured Debt, (b) investigate, assert any claims and defenses or causes of action against the DIP Agent, DIP Lenders, Pre-Petition Senior Secured Agent or Pre-Petition Senior Secured Lenders or their respective agents, affiliates, representatives, attorneys or advisors; provided however, that up to $5,000 may be used by any official committee or the Debtors solely for investigation of a potential Challenge (as defined below), (c) prevent, hinder or otherwise delay the DIP Agent's, any DIP Lender's, Pre-Petition Senior Secured Agent's or any Pre-Petition Senior Secured Lender's assertion, enforcement or realization on the cash collateral or the Collateral in accordance with this Order, (d) seek to modify any of the rights granted to the DIP Agent, DIP Lenders, Pre-Petition Senior Secured Agent or Pre-Petition Senior Secured Lenders hereunder, in each of the foregoing cases without such applicable parties' prior written consent or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by the DIP Agent in its sole discretion.

14.      *Indemnification, Waiver and Release.*  For the avoidance of doubt, the provisions of this paragraph apply to the DIP Agent and DIP Lenders solely in their capacities as such and all other parties solely in the capacity of their relationship to the DIP Agent and DIP Lenders and the provision of the DIP Obligations.  The Debtors are authorized to and shall jointly and severally indemnify and holds harmless the DIP Agent and DIP Lenders and its respective affiliates and their respective directors, officers, employees, advisors, agents and other representatives on the terms set forth in the Term Sheet.  Each of the Debtors shall be deemed fully, forever and irrevocably to have waived

18

and released any and all "claims" (as such term is defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff rights and recoupment rights against the DIP Agent and DIP Lenders, in their respective capacities as such, whether arising at law or in equity, relating to and/or otherwise in connection with the Financing, the Debtors, the Debtors' assets and the Cases, including, without limitation, any recharacterization, subordination, avoidance or other claim or defense arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, except to the extent any such claims, counterclaims, causes of action, defenses, setoff rights or recoupment rights relate to the DIP Agent's and DIP Lenders' failure to comply with the terms of the Financing.

15.     *Section 552.* Subject to entry of the Final Order, the DIP Agent and DIP Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent or DIP Lenders with respect to proceeds, product, offspring or profits of any of the Collateral.

16.     *Binding Effect; Successors and Assigns.*  This Order, including all findings herein, shall be binding upon all parties in interest in these Cases (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors); *provided, however,* that the DIP Agent and DIP Lenders shall have no obligation to extend any financing to the Borrower following the filing of a motion or other document seeking to convert or converting the case to a chapter 7 or seeking to appoint or appointing a trustee or examiner with enlarged powers relating to the operation of the business.

17.     *No Marshaling.* The DIP Agent and DIP Lenders shall be entitled to apply

19

the payments received pursuant to the DIP Term Sheet and the proceeds of the Collateral in accordance with the provisions of the DIP Term Sheet and in no event shall the DIP Agent or DIP Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of such payments, proceeds or the Collateral.

18.    *Reservation of Rights; Bar of Challenges and Claims.*

(a)    As used herein, **"Challenge Party"** means the committee, any trustee, or other party-in-interest. As used herein, **"Challenge"** means a claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Secured Debt, the liens securing the Prepetition Secured Debt, or any other claims or causes of action against Pre-Petition Senior Secured Agent or Pre-Petition Senior Secured Lenders, which Debtors, the committee, or another party-in-interest may assert, in accordance with this Section 18 of this Order. As used herein, **"Investigation Period"** means (i) with respect to any party-in-interest other than the committee, the period from the Petition Date until the date that is seventy-five (75) days after the entry of this Order; and (ii) with respect to the committee, the date that is sixty (60) days after the date that a committee is formed.

(b)    During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party (other than a Debtor) identifies a basis to assert a Challenge, it must notify the Debtors during the Investigation Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors are so notified, the Debtors shall have five (5) business days to notify the Challenge

RLF1 10065183v.1

Party of whether the Debtors intend to initiate such action (or a settlement in lieu of an adversary) and ten (10) days to initiate such action. If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action, settlement, or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. The Debtors, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(c)     If the Debtors do not timely receive notice of a potential Challenge, or if the Debtors do not independently commence an adversary proceeding or other procedurally proper action in respect of a Challenge, during the Investigation Period (or such later date as agreed in writing by Pre-Petition Senior Secured Agent, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Pre-Petition Senior Secured Agent and Pre-Petition Senior Secured Lenders shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived, released and discharged Pre-Petition Senior Secured Agent and Pre-Petition Senior Secured Lenders and each of their officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of

every type, which occurred on or prior to the date of entry of this Order with respect

to or in connection with the Prepetition Secured Debt, the liens securing the

Prepetition Secured Debt, the Credit Agreement, the other Loan Documents (as

defined in the Credit Agreement) or otherwise.

> (d)    ~~except as expressly set forth in this Order, the Investigation Period~~ ~~and Challenge Party procedures in sub-paragraph (b) above are not intended to~~ ~~affect in any way whatsoever the Debtors, the Committee's or any other~~ ~~party-in-interest's substantive rights, duties and obligations found at law, equity or~~ ~~otherwise.~~

19.    *Reservation of Matters Related to Verizon.* Notwithstanding anything to the

contrary herein, any security interests, rights or defenses, including any setoff or

recoupment rights and defenses, that Cellco Partnership, d/b/a Verizon Wireless and/or its

affiliates (collectively, "Verizon Wireless") may have against the Debtors, as well as any

defenses, objections or counterclaims of the Debtors or the DIP Agent hereto, are not

waived and are unaffected by this Order.

*(to the extent such parties have requisite standing)*

*, Pre-Petition ~~Senior Secured Creditors~~ Senior Secured Agent, Pre-Petition Senior Secured Creditors, DIP Lenders*

20.    *Effectiveness.* This Order shall constitute findings of fact and conclusions

of law.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or

any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure (which,

to the extent applicable are waived), this Interim Order shall be immediately effective and

enforceable upon its entry *nunc pro tunc* to the Petition Date and there shall be no stay of

execution or effectiveness of this Order.

21.    *Retention of Jurisdiction.* The Bankruptcy Court has and will retain jurisdiction to hear and adjudicate any dispute, action or proceeding with respect to the Financing and this Order.

22.    *Final Hearing.*  The Court shall conduct a final hearing on the Motion on April 4 ____ at 1:30 p.m.  The final order ("**Final Order**") will be in form and substance satisfactory to DIP Agent in all respects.  Objections to the Motion and form of Final Order shall be made in writing, filed with the Bankruptcy Court and served so as to be received on or before March 28 at 4:00 p.m. ET.  Objections shall be served upon: the committee, the Pre-Petition Secured Creditors, the DIP Agent, the DIP lenders, the Pre-Petition Junior Secured Creditor, the U.S. Trustee and the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims.

Dated:    Wilmington, Delaware
          March 19 2014

                                        _____
                                        THE HONORABLE KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE