**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| SIMPLEXITY, LLC, *et al.*[1] ) | Case No. 14-10569 (KG) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | **Proposed Hearing Date: Dec. 10, 2014 at 10:00 a.m.** |
| ) | **Proposed Objection Deadline: Dec. 8, 2014 at 4:00 p.m.** |
| ) | |

## JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 9019 APPROVING STIPULATION RESOLVING CLAIMS AGAINST FIFTH THIRD BANK AND ALLOWING CLAIMS OF FIFTH THIRD BANK UNDER THE FINAL DIP ORDER

The above-captioned debtors and debtors-in-possession (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"; together with the Debtors, the "Movants"), by their respective undersigned counsel, hereby move (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the *Stipulation Resolving Claims Against Fifth Third Bank and Allowing Claims of Fifth Third Bank Under the Final Order (I) Authorizing Debtors (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)2, 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* (the "Stipulation"),[2] in substantially the form attached hereto as

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: Simplexity, LLC (9770); Simplexity Services, LLC (2823) ("Simplexity Services"; together with Simplexity, LLC, the "Simplexity Debtors"); and Adeptio INPC Holdings, LLC (4699) ("Holdings"). The Simplexity Debtors' mailing address is 10790 Parkridge Blvd., Suite 200, Reston, VA 20191. Holdings' mailing address is Cira Centre, 2929 Arch Street, Suite 1800, Philadelphia, PA 19104.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Stipulation.

**Exhibit B**,[3] by and among the Debtors, the Committee, and Fifth Third Bank, in its capacity as DIP Agent and Pre-Petition Senior Secured Agent ("Fifth Third" or the "Bank"; together with the Movants, the "Parties"), and granting related relief. In support of this Motion, the Movants submit the *Declaration of James B. Spisak, Esq. in Support of Joint Motion* (the "Spisak Declaration"), a true and correct copy of which is attached hereto as **Exhibit C**. In further support of this Motion, the Movants respectfully represent as follows:

## I.    PRELIMINARY STATEMENT

1. Following extensive negotiations, the Debtors, the Committee and Fifth Third believe they have resolved the claims asserted by the Committee prior to the end of the Investigation Period (defined below) in a manner which provides for (a) increased funding of the administrative expenses incurred in the prosecution of the chapter 11 cases and the section 363 sale,[4] (b) additional priority recoveries (the first $1 million) from future claims recoveries in order to further reimburse the estates' administrative creditors, (c) a significant compromise of rights to recover future distributions after the first $1 million, so that general unsecured creditors will obtain distributions at the same time as Fifth Third under an agreed sharing formula, and (d) an exit strategy to move these cases in the most economically effective manner to a chapter 7 governance where a trustee will be able to manage the prosecution of the remaining valuable claims held by the estates, for the benefit of the estates' creditors. The settlement also conserves significant resources by eliminating the litigation risk with Fifth Third for

---

[3] The Movants continue to discuss certain issues with parties in interest, including Adeptio Funding LLC, and may file a revised Stipulation at or prior to the hearing on the Motion.

[4] As set forth below, the Stipulation provides for a $1.65 million increase in the DIP Revolving Loan Maximum Amount, and designates $1.5 million for accrued, allowed chapter 11 administrative expenses. The Exhibits to the Stipulation, which set forth the allocation of funds designated for administrative expenses, have been omitted to facilitate continuing discussions among administrative creditors to reach agreement on the precise allocation of those funds. The Movants expect to present agreed Exhibits for Court approval by the time of the hearing on the Motion.

the benefit of unsecured creditors, who would likely have recovered nothing if the claims were not successful.

2.  Importantly, and as shown more fully below, the settlement is well within the range of reasonableness considering the strength of the claims, the risks of litigation, and the paramount needs and interests of the creditors, and therefore satisfies the requirements for approval under Bankruptcy Rule 9019. The Movants therefore respectfully submit that the Court approve the Stipulation.

## II.  JURISDICTION

3.  This court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Standing Orders of Referral of Title 11 Proceedings to the United States Bankruptcy Judge for the District of Delaware* entered July 23, 1984 and September 6, 2001. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtors' chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are section 105(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and rule 9019(a) of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.  BACKGROUND

### A.  The Chapter 11 Cases

5.  On March 16, 2014 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). Since the Petition Date, the Debtors have continued to operate and manage their properties as debtors-in-possession.

6.  On March 25, 2014, the United States Trustee for the District of Delaware duly appointed the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [D.I. 55].

**B.     Capital Structure**

7.     Each of the Debtors were obligors (Simplexity and Simplexity Services as borrowers and Holdings as guarantor) under that certain credit agreement dated as of December 15, 2009 (as amended, the "Credit Agreement"), among Fifth Third, as Pre-Petition Senior Secured Agent, and the lenders party thereto.

8.     The Credit Agreement provided for (a) a revolving loan commitment of up to $15 million, and (b) a $30 million term loan (collectively, the "FTB Credit Facility").

9.     To secure the Debtors' obligations under the Credit Agreement, the Debtors granted to Fifth Third security interests in, and liens on, substantially all of the Debtors' personal and real property (the "Collateral").

10.     In proofs of claim filed in the Chapter 11 Cases (designated Claim Nos. 3, 5 and 6, the "FTB Claims"), Fifth Third, as Pre-Petition Senior Secured Agent, asserts a claim for $32,014,086 in principal amount of debt outstanding in connection with the Credit Agreement.

11.     In addition to the FTB Credit Facility, the Debtors were supported through capital contributions from Versa Capital Management, LLC ("Versa"), the non-debtor hedge fund manager of the entities that indirectly own the Debtors. Specifically, Debtor Holdings' membership interests are held by non-debtors Adeptio INPC Investments, LLC ("Adeptio Investments") (73%) and Adeptio INPC Investments Parallel, LLC ("Adeptio Parallel") (27%). Versa Capital Fund I, L.P. is a non-debtor hedge fund that owns 100% of Adeptio Investments. Versa Capital Fund I, Parallel, L.P. is a non-debtor hedge fund that owns 100% of Adeptio Parallel. Debtor Simplexity's membership interests are held entirely by Holdings, and Debtor Simplexity Services' membership interests are held entirely by Debtor Simplexity. *See Declaration Of Frank C. Bennett III In Support Of Chapter 11 Petitions And First Day Relief*, para. 13. [D.I. 9] (the "First Day Declaration").

4

12. The Debtors were also supported by a pre-petition second lien credit facility offered by Adeptio Funding LLC ("Adeptio Funding"), an entity formed by Versa. *See First Day Declaration*, para 11. The Debtors scheduled the Adeptio Funding claim in the amount of $36,805,063 as of the Petition Date.

### C. Post-Petition Cash

13. On April 30, 2014, the Court entered an order [D.I. 252] authorizing and approving the sale of certain of the Debtors' assets to Wal-Mart Stores, Inc. ("Walmart") pursuant to section 363 of the Bankruptcy Code in exchange for a cash payment of $10,000,000.

14. On April 30, 2014, the Court entered an order [D.I. 249] establishing procedures for the sale of miscellaneous assets held by the Debtors pursuant to sections 363 of the Bankruptcy Code.

15. As a result of the foregoing sales, the Debtors now have $11,214,937.99 of post-petition cash (the "Post-Petition Cash") in escrow with Fifth Third.

### D. The Final DIP Order

16. On April 11, 2014, the Court entered an order [D.I. 145] (the "Final DIP Order"), which, among other things, authorized the Debtors to use cash collateral and obtain post-petition financing from Fifth Third, as DIP Agent (the "DIP Loan"), up to the aggregate principal amount equal to $2,100,000 (the "DIP Revolving Loan Maximum Amount").

17. Pursuant to the Final DIP Order, the Debtors and the Committee, among other parties (each a "Challenge Party") were provided a period (the "Investigation Period") to determine whether a basis existed to assert a claim or cause of action challenging the extent, validity, perfection, priority or enforceability of any obligations under the FTB Credit Facility, the liens securing such obligations, or any other claims or causes of action against Fifth Third (a "Challenge"). If a Challenge Party identified a basis to assert a Challenge, it was required to notify the Debtors during the Investigation Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto. If the Debtors

5

chose not to initiate an action, settlement or adversary proceeding, the Challenge Party was provided a period in which to initiate an action or adversary proceeding themselves. *See* Final DIP Order, ¶ 31(b).

### E. The Committee's Claims Against Fifth Third

18. During the Investigation Period, the Committee reviewed hundreds of thousands of pages of documents produced by Fifth Third, the Debtors, Adeptio Funding, Phoenix Management Services, Inc. (Fifth Third's financial consultant) and Walmart, and conducted depositions of Terick Hinze (Fifth Third), Gev Nentin (Fifth Third), Richard Szekelyi (Phoenix), and Michael Chaney (Walmart) in connection with a potential Challenge.

19. By letter dated August 14, 2014, the Committee formally demanded that the Debtors commence a Challenge Action or consent to the Committee's standing to commence and prosecute a Challenge Action, against Fifth Third.

20. The Committee identified causes of action held by the Debtors against Fifth Third for declaratory judgment and other relief under, *inter alia*, sections 552(b), 506(c), and 510(c) of the Bankruptcy Code.

21. On September 4, 2014, after the Debtors consented to the Committee initiating an adversary proceeding against Fifth Third to assert these causes of action, the Committee filed a motion [D.I. 443] (the "Standing Motion") seeking standing and authority to commence the adversary proceeding against Fifth Third, and attached to the Standing Motion a draft Challenge complaint against Fifth Third (the "Draft Complaint"). Fifth Third objected to the relief sought in the Standing Motion and, on September 25, 2014, filed a motion to convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code [D.I. 473] (the "Conversion Motion"). Fifth Third also denied that relief could be obtained against it under any of the claims set forth in the Draft Complaint.

22. On October 14, 2014, the Committee and its members filed an objection to the FTB Claims [D.I. 506] (the "Claim Objection").

23. On October 23, 2014, the Court entered an order [D.I. 543] (the "<u>Memorandum Order</u>") denying the Conversion Motion to allow the parties time to engage in further negotiations. The Memorandum Order provided that if the parties did not reach resolution by December 1, 2014, Fifth Third "shall submit a certification of counsel to that effect accompanied by an Order converting the cases which the Court will enter." The Court deferred ruling on the Standing Motion.

### F. The Settlement Among the Parties

24. The Parties have used the time allowed by the Memorandum Order before conversion of these cases to reach a negotiated settlement of the Standing Motion and the Claim Objection while these cases remain in Chapter 11. The negotiated agreement provides for a release of the Debtors' causes of action against Fifth Third and allowance of Fifth Third's claims in exchange for an additional $1.65 million carveout from its cash collateral for the benefit of the Debtors' estates, and a negotiated split of proceeds of other litigation Collateral between Fifth Third and other claimants, net of chapter 7 administrative expenses. The salient terms of the settlement are as follows:[5]

- Settlement to be effectuated through amendments to the Final DIP Order as provided in the Stipulation.

- The DIP Revolving Loan Maximum Amount to be increased to $3,725,000.

- $1.5 million of the carveout to be used for allowed, accrued chapter 11 administrative expenses in accordance with the amended Budget.

- $125,000 of the carveout will be turned over to a chapter 7 trustee as initial funding for the prosecution of claims.

- After conversion to chapter 7, proceeds/litigation recoveries to be shared as follows, net of chapter 7 expenses - (i) the first $1,000,000 to holders of allowed chapter 11 administrative expenses of the Debtors on a pro rata basis, second to holders of allowed priority claims against

---

[5] The following represents only a summary of the salient provisions of the Stipulation. The Stipulation itself should be referred to in its entirety for the specific terms and conditions thereof. In the event of any conflict between the summary of the Stipulation contained herein and the Stipulation itself the Stipulation shall govern. Capitalized terms used, but not defined in the following summary, have the meanings ascribed to such terms in the Stipulation.

the Debtors on a pro rata basis, and third, to the extent of any remainder, all in accordance with the Bankruptcy Code's priority scheme; and (ii) thereafter, sixty-five percent (65%) thereof shall be distributed to Fifth Third, as DIP Agent, and thirty-five percent (35%) shall be distributed, free and clear of all liens, claims and other encumbrances, on a pro rata basis in accordance with the Bankruptcy Code's priority scheme, to holders of allowed unsecured claims of all types (whether administrative, priority or general), other than holders of allowed claims of any type whatsoever held or controlled by Fifth Third.

- FTB Claims shall be allowed and estate claims against Fifth Third shall be released.

- FTB will vote in favor of a chapter 7 trustee nominated by the Committee.

- An order approving the settlement must become final and non-appealable before December 29, 2014.

### IV.    RELIEF REQUESTED

25.    By this Motion, the Movants request entry of the Proposed Order approving the Stipulation and providing for the conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code upon consummation of the transactions set forth in the Stipulation.

### V.    BASIS FOR RELIEF REQUESTED

#### A.    The Settlement Stipulation Should be Approved as it is in the Best Interests of the Estates and Creditors.

26.    This Court has the authority to grant the relief requested in this Motion in the form of approval of the Stipulation pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order. . . that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing.[6] Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the

---

[6] Bankruptcy Rule 9019 provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996).

27. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998) (quoting *in re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997)). To reach such a determination, the Court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin,* 91 F.3d at 393. In striking this balance, the Court should consider the following factors:

(a) The probability of success in the litigation;
(b) The complexity, expense and likely duration of the litigation;
(c) The possibilities of collecting on any judgment which might be obtained;
(d) The interest of creditors and stockholders and a proper deference to their reasonable views of the settlement.

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-425 (1968); *see also, Martin,* 91 F.3d at 393. Participation by sophisticated parties is an additional factor that has been considered. *See In re Ionosphere Clubs*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F. 3d 600 (2d Cir. 1994).

28. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry,* 390 U.S. at 425. The *TMT* rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved, rather, the Court's obligation is to "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Cosoffi v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608, 613 (2d Cir. 1983), *cert denied*, 464 U.S. 822 (1983); *In re Mavrode*, 205 B.R. 716, 720 (Bankr. D.N.J. 1997); *see also In re Capmark Fin. Grp., Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010).

29. Applying these standards to this case, the Debtors and the Committee believe that approval of the Stipulation is in the best interests of the Debtors' estates and its creditors and is fair and equitable. The Stipulation was negotiated at arms'-length by sophisticated parties. The Debtors and the Committee believe it is in the best interest of the estates and its creditors to resolve the disputes between the Parties given the amounts at issue and the expense of prosecuting the Standing Motion and, if granted, an adversary proceeding against Fifth Third. Moreover, the Parties and their experienced counsel aided in crafting the Stipulation. *See Motorola Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (noting that approval of settlements includes weighing the support of other parties-in-interest and the "competency and experience of counsel" supporting the settlement). In fact, the Stipulation results from weeks of negotiations among counsel for the Parties. If the Court does not approve the Stipulation, the chapter 7 trustee may be embroiled in lengthy litigation with Firth Third and the Bank is likely to use its full resources to contest the trustee's attempts to recover proceeds based on the claims in the Draft Complaint.

30. Each of the four factors set forth in *TMT Trailer* weigh strongly in favor of approving the settlement here.

### 1. **Probability Of Success In the Litigation**

#### (a) **Fifth Third's Prepetition Liens Do Not Attach To Post-Petition Cash Under *ResCap***

31. The Committee believes its claims, if prosecuted, would be successful, but as with all litigation, there is significant risk that the claims may be successfully defended. On the probability of success, "[i]t is sufficient to present the Court with the legal positions asserted by each side and the facts relevant to those issues. The Court itself can evaluate the likelihood of the parties' prevailing in that litigation to determine whether the settlement is reasonable." *In re Wash. Mutual, Inc.*, 442 B.R. 314, 330 (Bankr. D. Del. 2011).

32. The Committee believes that Fifth Third's prepetition liens do not attach to the Post-Petition Cash, the realization of which was a direct and exclusive result of the chapter 11 process and the work of the estates' professionals. *See Official Comm. Of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 501 B.R. 549, 612 (Bankr. S.D.N.Y. 2013) ("ResCap") ("Although the [secured parties] have a lien on the proceeds of their prepetition collateral, any goodwill generated in connection with the assets sold…was not the proceeds of that collateral and is not subject to [the secured parties] liens"). The Committee believes that the ResCap theory is supported by the facts and circumstances of this case but, as the Bank has argued, this is a new theory in this District and the Bank will make every effort to prevent its application in this case. The outcome is uncertain.

        **(b)**     **Fifth Third's Liens Do Not Extend To Post-Petition Cash Based On the "Equities of the Case"**

33. Even if the Post-Petition Cash could be considered "proceeds" of Fifth Third's prepetition collateral, the Draft Complaint sets forth factual allegations with supporting evidence that supports a finding that the "equities of the case" prevent Fifth Third's liens from attaching to the Post-Petition Cash. *See* 11 U.S.C. § 552(b) (prepetition security agreement covering proceeds will be enforced except to any extent that the court, "based on the equities of the case," orders otherwise). Fifth Third argues that the "equities of the case" do not prevent its lien from attaching to the proceeds of the sales because its cash collateral and DIP financing were used to generate those proceeds. Again, there can be no certainty of outcome on this claim.

        **(c)**     **Equitable Subordination**

34. The Committee asserts that the Bank's claims should be equitably subordinated based on the Banks' conduct leading up to the bankruptcy, including its deceptive appearance that it would continue to forbear from exercising rights under the credit documents in order to induce Versa to inject capital in order to facilitate the collection of receivables, just before a cash sweep (and then

11

effectively converting those proceeds by taking them in the sweep). Fifth Third, on the other hand, asserts that equitable subordination is inappropriate because the Committee has not identified any "laws, regulations or agreements violated by the Bank." *Bank Objection to Standing Motion* [D.I. 478], at pp. 11-12. The Bank also denies that it engaged in any deceptive or inequitable conduct. As with the prior claims, the determination here is very fact/evidence-intensive, and the outcome of any litigation of this claim is uncertain. *See In re BH S & B Holdings LLC*, 420 B.R. 112, 156 (Bankr. S.D.N.Y. 2009) (application of the equitable subordination factors is "fact-intensive").

### (d)    Surcharge Of Collateral

35.    Certain administrative expenses incurred in these Chapter 11 Cases were necessary to realize the Post-Petition Cash because the Debtors could not likely have realized any material amount in exchange for its assets in any other process. That is a classic fact pattern supporting the application of section 506(c) of the Bankruptcy Code. To recover under section 506(c), the Committee must demonstrate that the amounts to be surcharged were "reasonable and necessary" to the realization of the Post-Petition Cash. *In re Towne, Inc*. 536 Fed. Appx. 265, 268 (3d Cir. 2013). Like the equitable subordination claim, the surcharge analysis is fact-intensive, and may require an itemization of all fees for services rendered and expenses incurred by the estates' professionals. *See Brookfield Prod. Credit Ass'n v. Borron*, 36 B.R. 445, 449 (E.D. Mo. 1983). Additionally, the range of potential outcomes under 506(c) is wide. Given the uncertainty of the result, the proposed Settlement which assures administrative creditors of certainty (albeit on a compromised basis) is plainly preferable.

### (e)    Avoidance of Fifth Third's Unperfected Liens On Commercial Tort Claims

36.    The Draft Complaint alleges that Fifth Third does not have a perfected lien on commercial tort claims of the Debtors and, thus, seeks to avoid such liens so that the estates may pursue the claims. The Bank argues that it has a lien on contract claims but not the commercial tort causes of

action against Brightstar Corp. *et al.* The value of the Brightstar causes of action include both commercial tort and contract claims. Thus, it is unclear how the Court would resolve these issues, and what percentage of any Brightstar litigation recovery (assuming success on those claims) would inure to the benefit of the respective parties. The Settlement, particularly through the claims proceeds sharing mechanism, resolves the lien application and sharing issues by providing for a clean sharing formula on all claims proceeds, and therefore is highly preferable to litigating the question of whether the Bank has liens on all or part of the causes of action.

### (f) Avoidance Of Fifth Third's Unperfected Liens On Fixtures

37. The Committee alleges that Fifth Third has unperfected liens on fixtures because UCC filings were not made in all locations where the Debtors operated. The Bank opposes this claim because it believes that none of the Debtors' assets were "fixtures" in the realty sense. Thus, the outcome of this claim is also speculative and the value of the amounts at issue are likely small or zero (and on a standalone basis, as an alternative to the benefits of settlement, may not be worth pursuing on a cost-benefit basis).

### 2. Complexity And Expense Of Litigation

38. As the Standing Motion indicated, certain of the claims involve complex areas of bankruptcy law, including new legal theories. Litigation on the prepetition value of the Debtors' assets could involve the use of expert testimony, further increasing the potential cost of litigation.

39. The Bank has repeatedly indicated its willingness to forcefully defend the claims. Although there has been some discovery during the Investigation Period, it is likely that the parties will engage in further discovery, including depositions of other (including expert) witnesses and the production and review of further documents. The costs of this litigation could be easily exceed $1 million. Given the level of anticipated expense, it is impossible to say that creditors would be better off

litigating, even if there were an assumption that they were likely to succeed, because the net recoveries after the expense of litigation could well be less than the aggregate benefits that they are eligible to receive through the settlement. The Stipulation avoids all such expense and uncertainty.

### 3.     Difficulties In Collection

40.    If the Committee or trustee were successful in prosecuting claims contained in the Draft Complaint, collection would not be difficult as the Post-Petition Cash remains in escrow. Consequently, this factor is neutral.

### 4.     Interests Of Creditors

41.    The Stipulation is without a doubt a benefit for all creditors of the Debtors' estate. The settlement results in the estates' immediate access to $1.65 million of the Post-Petition Cash, which will be used to satisfy accrued and unpaid chapter 11 expenses up to $1.5 million. An additional $125,000 will be used by the chapter 7 trustee upon conversion to pursue additional litigation recoveries against parties other than Fifth Third. The "split" on litigation recoveries to unsecured creditors is reasonable because it eliminates litigation risk with Fifth Third and provides a clean platform for obtaining a distribution to general unsecured creditors.

42.    The alternative to settlement is to await the conversion to chapter 7 mandated under the Memorandum Order, and have a chapter 7 trustee expend significant resources getting "up to speed," before engaging in what would likely be protracted litigation against Fifth Third over the Post-Petition Cash. In that scenario, the Movants believe that Fifth Third would not increase its current offer and would vigorously defend litigation by the chapter 7 trustee. Litigation by the trustee would generate additional, substantial administrative expenses in the form of professional fees, and lead to an uncertain outcome given the potential defenses available to Fifth Third. Given the costs of litigation, even if a chapter 7 trustee litigated the claims to success there is little or no assurance that unsecured creditors

would recover more than they would under the settlement proposed herein. The same would be true if the parties were to settle at some later point, because the likely incurrence of substantial additional administrative expenses would necessarily mean that the net recoveries for unsecured creditors would be much less than under the proposed settlement herein

43. Accordingly, the settlement is well within the "range of reasonableness" considering the strength of the claims, the risks of litigation, and the paramount needs and interests of the creditors, and therefore satisfies the requirements for approval under Bankruptcy Rule 9019. *W.T. Grant Co.*, 699 F.2d at 613.

### B. Conversion To Chapter 7 Upon Closing of the Settlement is in the Best Interests of the Estates and Creditors.

44. The Memorandum Order provides that the Court will enter an order converting these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code if the Parties failed to reach resolution by December 1, 2014.

45. The parties have agreed to have the Chapter 11 Cases converted to chapter 7 upon consummation of the transactions set forth in the Stipulation, and Fifth Third has agreed to vote in favor of any chapter 7 trustee that is nominated by the Committee. A chapter 7 trustee would pursue Avoidance Actions and other litigation against third parties for the benefit of the Debtors' estates. The Stipulation provides a $125,000 carveout from the Collateral for use by such chapter 7 trustee. Conversion would allow these funds to be used toward funding litigation that will ultimately provide recovery for unsecured creditors, and forego the administrative expenses associated with confirmation of a chapter 11 liquidation plan. Accordingly, the Movants submit that conversion after closing of the settlement is in the best interests of the Debtors' estates.

## VI. <u>NOTICE</u>

46. This Motion will be served on (a) Fifth Third; (b) Versa; (c) Adeptio Funding; (d) the U.S. Trustee; (e) all entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002; and (f) all known creditors.

## VII. <u>NO PRIOR REQUEST</u>

47. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Movants respectfully request that the Court enter an order, substantially in the form of the Proposed Order, (a) granting this Motion; (b) approving the Stipulation in substantially the form attached as **Exhibit B**; and (c) granting such other and further relief as the Court deems just or proper.

Dated: November 26, 2014
       Wilmington, Delaware

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **HUNTON & WILLIAMS LLP** <br> Peter S. Partee, Sr. <br> (admitted *pro hac vice*) |
|   /s/ Robert S. Brady<br>Robert S. Brady (No. 2847)<br>Edmon L. Morton (No. 3856)<br>Kenneth J. Enos (No. 4544)<br>Justin P. Duda (No. 5478)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253 | Michael P. Richman<br>(admitted *pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166-0136<br>Telephone: (212) 309-1000<br><br>-and-<br><br>*/s/ Christopher A. Ward*<br>Christopher A. Ward<br>(Del. Bar No. 3877)<br>Shanti M. Katona (Del. Bar No. 5352)<br>**POLSINELLI PC**<br>222 Delaware Avenue, Suite 1101<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-0920 |
| *Counsel to the Debtors and Debtors in Possession* | *Attorneys for The Official Committee of Unsecured Creditors of Simplexity, LLC, et al.* |