**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| Simplexity LLC, *et al.,* | : | Case No.  14-10569 (KG) |
| | : | |
| Debtors.[1] | : | **Hearing Date: 12/10/14 @ 10:00 a.m.** |
| | : | **Objection Deadline: 12/9/14 by 4:00 p.m.** |

**THE UNITED STATES TRUSTEE'S OBJECTION TO THE JOINT MOTION OF THE
DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 105(A) AND FED. R. BANKR. P.
9019 APPROVING STIPULATION RESOLVING CLAIMS AGAINST FIFTH THIRD
BANK AND ALLOWING SECURED CLAIM OF FIFTH THIRD BANK UNDER THE
FINAL DIP ORDER (D.I. 574) AND CROSS-MOTION TO CONVERT THESE
CHAPTER 11 CASES TO CHAPTER 7 CASES**

In support of her Objection to the Joint Motion of the Debtors and the Official Committee

of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr.

P. 9019 Approving Stipulation Resolving Claims Against Fifth Third Bank and Allowing

Secured Claim of Fifth Third Bank under the Final Dip Order  (the "Motion") (D. I. 574) and

Cross-Motion to Convert these Chapter 11 Cases to Chapter 7 Cases ("Objection"), Roberta A.

DeAngelis, the United States Trustee for Region 3 ("U.S. Trustee"), by her undersigned counsel,

states as follows:

1.    This Court has the authority and jurisdiction to hear this Objection.[2]

2.    Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the

administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
Simplexity, LLC (9770); Simplexity Services, LLC (2823) and Adeptio INPC Holdings, LLC (4699).

[2] Capitalized terms set forth in this objection are the same as those ascribed to capitalized terms as set forth in the so-
referenced relevant pleading or document.

1

Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

3.      In furtherance of her case supervisory responsibilities, as well as pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to raise and be heard on this Objection.

## PRELIMINARY STATEMENT

4.      The stipulation underlying the settlement proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Movants") sets in motion a substantive outcome of these cases that adversely affects the substantive rights of creditors and parties-in-interest by allowing estate professionals to be paid without court order ahead of other administrative creditors, improperly invokes the use of Section 105 of the Bankruptcy Code and contravenes other various provisions of the Bankruptcy Code including but not limited to Sections 702 and 726.

5.      In so far as the settlement benefits certain creditors over others, especially estate professionals over similarly situated administrative creditors, it appears to create a conflict for estate professionals and impugns the proper exercise of the Movants' fiduciary duties to the estate and creditors.

6.      In addition, the terms and conditions of the settlement do not appear to be finalized as the Movants continue to discuss certain issues with creditors and parties-in-interest and may file a revised Stipulation at or prior to the hearing on the Motion. In addition, important

exhibits to the Stipulation have not been filed with the Motion and these aspects of the settlement remain unknown to creditors, parties-in-interest, the U.S. Trustee and this Court.

## BACKGROUND AND STATEMENT OF FACTS

7.       Each of the Debtors filed a voluntary Chapter 11 petition on March 16, 2014.

8.       On March 25, 2014, the U. S. Trustee appointed a statutory committee of unsecured creditors (the "Committee").

9.       On May 14, 2014, Fifth Third Bank filed a motion to convert these Chapter 11 cases (D.I. 281). This motion was denied by order of this Court on June 13, 2014 (D.I. 353).

10.       On September 4, 2014, the Committee filed a motion (the "Standing Motion") seeking standing and authority to commence an adversary proceeding against Fifth Third Bank, and attached to the Standing Motion, a draft complaint alleging certain causes of action against Fifth Third Bank (the "Draft Complaint") (D.I. 443).

11.       On September 25, 2014, Fifth Third Bank filed another motion to convert these Chapter 11 cases (D.I. 473).

12.       At the end of an October 16th hearing, the Court took the matter under advisement and thereafter entered an order (the "Memorandum Order") on October 23, 2014, denying Fifth Third Banks' motion to convert these cases. (D.I. 543). The Memorandum Order states in pertinent part that ". . . the Debtors and the Committee, especially the Debtors, have expressed cautious optimism that a negotiated resolution remains possible and, in that event, a confirmable liquidating plan would result. The Court therefore concludes that in the very short term, there exists a reasonable likelihood of a plan being confirmed and the unusual circumstance is on-going discussions which would lead to a confirmable plan. In contrast, a pause in converting the case will do very little, if any, harm to FTB." Memorandum Order at p. 2.

13.    On November 26, 2014, the Movants filed this Motion seeking, among other things, (i) the approval of a Stipulation increasing the DIP Revolving Loan by $1.65 million thereby increasing Fifth Third Bank's claim, (ii) the release of certain estate causes of action and claims against Fifth Third Bank, (iii) the payment of some but not all Chapter 11 administrative expenses, (iv) the immediate payment by the DIP Agent directly to the respective professionals of the amounts set forth in the Budget for such professionals (apparently without any court order awarding final compensation in these cases)[3]; (v) the fashioning of a distribution scheme imposed upon the Chapter 7 trustee and Chapter 7 creditors contrary to statutory provisions and (vi) the imposition of certain parameters of a Chapter 7 trustee election in contravention of Section 702.

14.    The terms of the Stipulation and the Settlement have yet to been finalized. The Movants state that they continue to discuss certain issues with parties-in-interest, including Adeptio Funding LLC, and may file a revised Stipulation at or prior to the hearing on the Motion. In addition, the exhibits to the Stipulation, which apparently sets forth the allocation of funds designated for professional fees and other administrative expenses, have been omitted. Settlement Motion at p. 2, fn. 3 and 4.

---

[3] No final fee applications have been presented and no final order approving any professional fees has been entered in these cases. In fact, the only court order actually approving any professional fees in these cases is the Omnibus Order Approving First Quarterly Fee Applications (D.I. 536) approving interim fees through May 31, 2014 for Young, Conaway, Stargatt & Taylor, LLP of $887,977.00; Hunton & Williams, LLP of $745,648.40; Polsinelli, PC of $54,839.00 and Gavin/Solomonse, LLC of $76,727.50.

4

## LAW AND ARGUMENT

### A.    The Settlement Violates the Bankruptcy Code's Distribution Priority Scheme.

15.    The Settlement is premised upon the misguided argument that the Committee is entitled to settle claims that it has asserted as a fiduciary on behalf of the Debtors' estates for a cash payment to estate professionals and then to other creditors in a certain fashion rather than to the estates. The claims and causes of action asserted by the Committee in the Draft Complaint would be brought on behalf of the Debtors' bankruptcy estates; they are assets of the Debtors' estates[4] (*see* 11 U.S.C. §§ 541(a)(1) and (a)(6), and not the Committee's property.

16.    While an official committee of unsecured creditors can in appropriate circumstances be given standing to bring derivative claims on behalf of the estate if the bankruptcy court so orders, *Official Comm. Of Unsecured Creditors of Cybergenics Corp v. Chinery*, 330 F.3d 548 (3d Cir. 2003), it brings such claims on behalf of the estates, not on behalf of particular parties or creditors. *See* 11 U.S.C. § 1103 (setting forth powers and duties of committees); *Official Comm. of Unsecured Creditors of Applied Theory Corp. v. Halifax Fund, L.P. (In re Applied Theory Corp.)*, 493 F.3d 82, 87 (2d Cir. 2007) (Committee did not have rights held by individual creditors to assert equitable subordination claim); *Unsecured Creditors Comm. Of Debtor STN Enters. v. Noyes (In re STN Enters.)*, 779 F.2d 901 (2d Cir. 1985) (Creditors' committee had implied qualified right to initiate adversary proceedings in the name of the debtor). The only claims the Committee is in a position to release are necessarily estate

---

[4] For example, in the Standing Motion, the Committee states that "[t]he Committee has identified causes of action held by the Debtors against FTB for declaratory judgment and other relief under, *inter alia*, sections 552(b), 506(c), and 510(c) of the Bankruptcy Code." Standing Motion at ¶ 33.

claims. Any recovery by the Committee on those derivative claims must be for the benefit of the estate, not the Committee or its constituents. *Cf. In re Pittsburgh & L.E.R. Co. Securities and Antitrust Litigation*, 543 F.2d 1058, 1068 (3d Cir. 1976) (recoveries in derivative actions belong to the corporation on whose behalf the suit was brought and fairness of settlement of derivative claims must be measured by benefit to corporation).  Because the funds to be paid by Fifth Third Bank in consideration of the release of claims belonging to the Debtors' estates, the funds represent estate property.

17.      In *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit identified four criteria that this Court should consider in evaluating a proposed settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Id*. The *Martin* criteria are "designed to achieve the objective of having the trustee or debtor in possession act in the best interests of the estate." *In re Nationwide Sports Distribs., Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) (citation omitted). The trustee or debtor in possession bears the burden of persuasion to prove that the settlement is in the estate's best interests. *See id.* (citations omitted).

18.      In considering the fourth *Martin* factor, *i.e.*, the "paramount interest of the creditors", courts in the Third Circuit have taken the practical approach of (i) identifying the parties affected by the proposed settlement and (ii) assessing what effect the settlement has on their interests.  *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (rejecting proposed compromise under Rule 9019 as a "disguised" plan of reorganization where a proposed

settlement of an exclusivity motion contained terms addressing control of the case); *In re Key3Media Group, Inc.*, 336 B.R. 87, 98 (Bankr. Del. 2005) (noting the position of secured creditors with regard to compromise of estate claims subject to liens); *see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002) (noting that, on remand, bankruptcy court should consider proposed settlement's impact on equity security holders, given that unsecured creditors were paid in full).  In fulfilling its gatekeeping role under *Martin*, this Court is obligated to reject settlements which favor one creditor constituency at the expense of another creditor group. *See Tindall v. Mavrode (In re Mavrode)*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997) ("A proposed settlement will necessarily fail where one creditor benefits at the other creditors' expense").  If "the rights of others who are not party to the settlement are unduly prejudiced," this Court should reject the settlement, as "'no one [should be] set apart for unfair treatment.'" *See In re Medical Asset Management, Inc.*, 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000) (citation omitted).

19.    Additionally, the court must be certain that the settlement is not a means to avoid the priority strictures of the Bankruptcy Code. *Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 464 (2d Cir. 2007). As in *Louise's, supra*, the Settlement goes beyond resolving the claims identified in the Draft Complaint and the DIP Financing. The Settlement is tainted by provisions dictating how remaining estate assets will be distributed, and the disposition of these Chapter 11 cases in this way "cannot be fairly denoted a Rule 9019 compromise." *Id.*, 211 B.R. at 802.

20.    A trustee, debtor-in-possession or third party seeking to act in the stead of either of them "has a fiduciary relationship with *all* creditors of the estate," and is obligated to act in a

manner that maximizes the value of the estate. *Martin, supra*, 91 F.3d at 394 (emphasis in original, citations omitted).

21.    Here, the Committee (which investigated the facts and circumstances behind the Draft Complaint on behalf of the Debtors' estates and not in its own right) is acting inconsistent with its fiduciary relationship with *all* creditors of the estate. Instead, the Committee appears to be acting in the interest of estate professionals, forsaking the interests of the estate and other creditors. Such arrangements by the Committee are antithetical to the paramount interest of all creditors collectively, and as such the Settlement should not be approved.

22.    Unless approval of the Settlement is expressly conditioned upon modification to provide for the proper payment of creditors in accordance with the Bankruptcy Code, the Settlement is not reasonable. The proposed exclusive payment to the estate professionals falls outside of the range of possible remedies if the Committee were to successfully litigate the claims and causes of action against certain parties as set forth in the Draft Complaint. If the Committee (or a Chapter 7 trustee) successfully prosecuted the causes of action and claim objections that it has asserted against Fifth Third Bank on behalf of the Debtors' estates, the fruits of that prosecution would be available for distribution in accordance with the Bankruptcy Code's Congressionally-mandated scheme of distribution among creditors.

23.    "Equality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58 (1990).  The Bankruptcy Code sets forth in numerous, interlocking sections a comprehensive scheme establishing the order in which claims against a debtor are to be paid in virtually all bankruptcy cases.  *See* 11 U.S.C. §§ 503, 506, 507, 510, 547, 726. For example:

8

- Section 506 governs the extent to which a claim is secured.  11 U.S.C. § 506.

- Section 507 specifies ten types of claims entitled to receive special priority among unsecured claims, as well as the order in which those claims are to be paid. Priority claims include, among others, certain administrative expenses, certain claims of trade creditors who delivered goods in the 20 days before entry of the order for relief, and certain tax claims.  11 U.S.C. § 507.

- Section 503 details the types of expenses that can be paid as administrative expenses, such as a Chapter 7 trustee's compensation, actual and necessary costs of preserving the debtor's estate, and fees owed to attorneys and accountants retained by the debtor and unsecured creditor committees to the extent allowed under Section 330. 11 U.S.C. §§ 503, 330.

- Section 510 specifies the circumstances under which certain claims may be subordinated to others.  11 U.S.C. § 510.

- Section 547 permits certain payments by the debtor that prefer one creditor over others to be voided and the funds returned to the estate for distribution in accordance with the Code's priority scheme. 11 U.S.C. § 547.[5]

24.    Here, the Movants seek authority to make payments that ignore the statutory priority scheme, attempting to justify it as a settlement that is somehow in the best interest of the estate, even though such a payments could not be made in a Chapter 11 plan without the consent of senior classes of creditors, and could not be made in a Chapter 7 case. There is no equitable or legal basis for disregarding the Code's priority scheme here simply because the payments will be paid in the context of a litigation settlement and modifications to DIP financing rather than in a Chapter 11 plan.

25.    The Supreme Court has rejected attempts to alter the statutory priorities set forth in the Code, finding such actions usurp the legislative function. *See, e.g., United States v.*

---

[5] The preference rule "prevents debtors from depleting the estate to pay favored creditors with assets that otherwise would have been apportioned among creditors according to the [Code's priority scheme];" its purpose is to foster equality of distribution among the creditors of an insolvent debtor. *In re Pillowtex, Inc.*, 304 F.3d 246, 252 (3d Cir. 2002).

*Noland*, 517 U.S. 535 (1996). *Accord Adventure Resources, Inc. v. Holland*, 137 F.3d 786, 796-797 (4th Cir. 1998); *Air Pilots Ass'n v. Shugrue (In re Ionosphere Clubs, Inc.)*, 22 F.3d 403, 408 (2d Cir. 1994). *See also* 4 Alan N. Resnick & Henry J. Sommer Collier on Bankruptcy ¶ 507.02[3] (16th ed. 2010) (court may not substitute its judgment for Congress's by exercising its discretion in a way that impacts the priority in which claims are paid from the estate).

26.     Other circuit courts have rejected attempts by parties to enter into settlements in Chapter 11 that circumvent the statutory priority scheme. The Fifth Circuit reversed the district court's approval of a pre-plan settlement of litigation involving the debtor and a junior unsecured creditor in *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, (5th Cir. 1984).

27.     Applying similar logic, the Second Circuit vacated a bankruptcy court's approval of a preplan settlement that distributed estate assets directly to a trust for the benefit of general unsecured creditors instead of distributing them pursuant to the Code's priority rules where the creditors' committee had brought the action on behalf of the estate. *Iridium, supra*. The *Iridium* court held that whether a pre-plan settlement complies with the Bankruptcy Code's distribution scheme is the most important, and often the dispositive factor in determining whether the settlement is "fair and equitable." *Iridium*, 478 F. 3d at 455.

28.     In this case, the Movants seek to circumvent the Bankruptcy Code's priority scheme by effecting a distribution first to estate professionals outside of the Chapter 11 case and then after conversion of the cases to certain but not all Chapter 7 administration, and other Chapter 11 administrative and priority creditors and then to general unsecured creditors. That attempt, like those rejected by the Second and Fifth Circuits, cannot be approved.

29.     Although the First Circuit reached a somewhat different result in *Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305 (1st Cir. 1993) based on the distinctive facts of that case, its reasoning is consistent with *AWECO* and *Iridium*, which held that the Code's priority scheme applies to a Chapter 11 settlement as well as to a plan. *SPM*, 984 F.2d at 1305.

30.     In *SPM*, a secured creditor and the unsecured creditors' committee entered into an agreement under which the secured creditor and the general unsecured creditors would share whatever proceeds they received through reorganization or liquidation according to a prescribed formula. *Id.* at 1308. The bankruptcy court found that term violated the Code's priority scheme and ordered the funds intended for the unsecured creditors to be paid to the estate instead. *Id.* at 1309. Although the First Circuit reversed, it did not hold that the settlement was not subject to the Code's priority scheme. The court held, rather, that once the estate funds were distributed to the creditors in accordance with the Code's rules and priorities, the funds were no longer estate property and could be used or shared by the creditors without regard to the Bankruptcy Code's requirements.[6] *Id.* at 1313. Simply put, once the funds are no longer estate property, the Bankruptcy Code does not control their distribution. *But see In re Armstrong World Indus., Inc.*, 432 F.3d 507, 514 (3d Cir. 2005) (emphasizing the narrow scope of *SPM's* holding and rejecting concept that creditors are generally free to do whatever they wish with the bankruptcy proceeds they receive.); *Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79 (same).

---

[6] The U.S. Trustee takes no position at this time whether this holding was correct.

31.    Here, the funds to be paid in accordance with the Stipulation and under the Settlement are estate property. Although the Movants and Fifth Third Bank may assert that such funds are part of Fifth Third Bank's collateral, Fifth Third Bank's security interest (and claims ) are directly challenged in the Draft Complaint. Indeed, pursuant to the Stipulation and Settlement, the claims and causes of action set forth in the Draft Complaint are waived, released and discharged, enabling Fifth Third Bank to increase its claim and enabling the proposed distribution to estate professionals. Such actions appear to breach of the fiduciary obligation to the Debtors' estates that the Committee undertook when it commenced the investigation into the facts and circumstances underpinning the Draft Complaint.

32.    Although the *SPM* decision is sometimes cited in support of so-called class-skipping gifts, the *Iridium* court distinguished *SPM* from the situation presented in this case and in *Iridium*:

> Here, the Settlement perfected and validated the Lenders' liens only upon the entry of an order approving the Settlement.... Until the Settlement was approved, then, the Lenders' liens were contested and the money held by the Lenders was an asset of the Estate. This case is quite different from *SPM*, where the creditor had an uncontested, perfected, first security interest in all of SPM's assets except certain real estate.

*Iridium*, 478 F. 3d at 461 (footnotes omitted).

33.    The claims and causes of action being released under the Settlement are property of the Debtors' estates. *Bd. of Trustees of Teamsters Local 863 Pension Fund*, 296 F.3d at 169 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)). Proceeds from the compromise of estate causes of action are likewise property of the estate. 11 U.S.C. § 541(a)(6); *see In re Martin*, 91 F.3d at 394-95 (compromise of estate claim constituted sale of estate asset).

12

34.     Prior decisions in the Third Circuit establish that the Bankruptcy Code's comprehensive priority scheme is not limited to plan confirmation in Chapter 11 cases. If the proposed distribution provisions were included in a Chapter 11 plan, there is no question that the Third Circuit would find it violates the Code's priority scheme. Although the Third Circuit has not yet addressed the precise issue on appeal, its decisions in *Armstrong* and other cases strongly suggest that the Third Circuit would reach the same result here.

35.     In *Armstrong*, the Chapter 11 debtor filed a reorganization plan that proposed to distribute warrants to the debtor's equity holders even though all of the unsecured creditors' claims would not be paid in full. *Armstrong*, 432 F.3d at 509. The district court denied confirmation because the plan contemplated the transfer of warrants to a junior class of equity holders even though more senior classes of unsecured creditors would not be paid in full. *Id.* at 510-11. The Third Circuit affirmed, noting that "[a]llowing this particular type of transfer would encourage parties to impermissibly sidestep the carefully crafted strictures of the Bankruptcy Code, and would undermine Congress's intention . . . ." *Armstrong*, 432 F.3d at 514. The Third Circuit further rejected the idea that equitable considerations or time constraints could justify a different result. *Id.* at 517, 518. *Accord In re DBSD N. Am., supra.*, 634 F.3d at 100-101 (reversing the bankruptcy court's confirmation of a reorganization plan that proposed to give the existing shareholder shares and warrants in the reorganized entity without full payment of the general unsecured creditors' claims).

36.     In *DBSD N. Am*, the Second Circuit rejected the bankruptcy court's characterization of the shares and warrants as a gift from the holders of the second lien debt, as well as its reasoning that such gifting was permissible when it comes from secured lenders, there

is no doubt about their status, understandable reasons exist for the gift, no ulterior motives are involved, and the complaining creditor would not have gotten more in the absence of the gift. See *Id.,* 634 F.3d at 87 (explaining bankruptcy court's reasoning). The Second Circuit recognized that "[g]ifting may be a powerful tool in accelerating an efficient and non-adversarial . . . chapter 11 proceeding," but concluded that "Congress was well aware of both its benefits and disadvantages when it codified the [absolute priority] rule in the Bankruptcy Code." *Id.* at 100.

37.     Further, the Third Circuit has addressed the standards for approving Chapter 11 settlements and held that settlements in Chapter 11, like plans and other aspects of reorganization must be fair and equitable. *In re Nutraquest*, 434 F.3d at 645 (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). Under that standard, the court must consider whether the settlement is fair to all creditors regardless of whether anyone objects. *Id.* at 645. In *Nutraquest*, a creditor alleged that the settlement could not be approved because it prevented the creditor from asserting claims for contribution against the debtor. In affirming the settlement, the court was careful to explain that the disparate treatment alleged by the complaining creditor was not due to the terms of the settlement. *Id.* at 646.

38.     The Third Circuit has also addressed the Code's priority scheme in the context of an asset sale in Chapter 11 and the need to remain faithful to that scheme. *In re Trans World Airlines, Inc.*, 322 F.3d 283, 291 (3d Cir. 2003). In *TWA*, the court affirmed a bankruptcy court interpretation of Section 363(f) authorizing the sale of estate property free and clear of other interests based in large measure on its consistency with the Code's priority scheme. The court reasoned that "[t]o allow the claimants [who held low priority general unsecured claims] to assert successor liability claims against [the purchaser] while limiting other creditors' recourse to the

proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme." *Id.* at 292.

39.     Other circuit courts also plainly regard consistency with the Code as the prism through which all conduct should be viewed in Chapter 11. For example, the Eighth Circuit in an *en banc* decision that was affirmed by the Supreme Court held that section 506(c) did not grant standing to a creditor to surcharge the collateral of a secured creditor. *In re Hen House Interstate, Inc.*, 177 F.3d 719 (8th Cir. 1999), *aff'd*, 530 U.S. 1 (2000). In reaching its decision, the court concluded that creditor standing "would undermine the carefully crafted equality-of-distribution scheme fundamental to the operation of the Bankruptcy Code." *Id.* at 723-724.  And, as set forth above, the *Iridium* court held that "[i]n the Chapter 11 context, whether a pre-plan settlement's distribution plan complies with the Bankruptcy Code's priority scheme will be the most important factor for a bankruptcy court to consider in approving a settlement under Bankruptcy Rule 9019.  In most cases, it will be dispositive. *Iridium*, 478 F.3d at 455.

40.     These cases establish beyond doubt that the Code's comprehensive priority scheme applies throughout a Chapter 11 case, not just in the context of a reorganization plan. Indeed, one simply cannot accomplish, through the settlement of a contested matter or an adversary proceeding, a resolution that binds and determines all creditors' rights, disenfranchising the creditors (and the Chapter 7 trustee) who have not participated in the "settlement" process. Doing so would be contrary to the comprehensive procedural protections set forth by Congress in 11 U.S.C. §§ 1121 through 1129. *See, e.g., In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) ("The debtor and the Bankruptcy court should not be able to short-circuit the requirements of Chapter 11 for confirmation of a reorganization plan by

establishing the terms of the plan *sub rosa* in connection with a sale of assets."); *In re Swallen's, Inc.*, 269 B.R. 634, 638 (BAP 6th Cir. 2001) ("At least when a party in interest objects, a bankruptcy court cannot issue orders that bypass the requirements of Chapter 11, such as disclosure statements, voting, and a confirmed plan, and proceed to a direct reorganization on the terms the court thinks best, no matter how expedient that might be."); *In re Louise's, Inc., supra*, 211 B.R. at 801 (rejecting proposed compromise under Rule 9019 as a "disguised" plan of reorganization where a proposed settlement of exclusivity motion contained terms addressing control of case).

41.     Policy considerations also favor adherence to Congress's comprehensive priority scheme as expressed in the Bankruptcy Code. Bankruptcy is a zero-sum proposition. In most cases, estate assets are insufficient to pay all creditors in full. Every recovery by one claimant therefore comes at the expense of another. Congress decided the order in which different types of claimants should be paid. By codifying its policy choices, Congress sought to ensure that those specific priorities would be applied uniformly in bankruptcy cases, so that individual bankruptcy judges would not be required to make such choices. Congress's prerogative to legislate distribution priorities should be adhered to and respected.

42.     Moreover, application of the priority scheme expressed in the Bankruptcy Code makes cases easier to administer and more certain. Creditors know in what order they are entitled to be paid and can more accurately predict the amount, if any, they will receive. Parties will neither need to litigate cases like this one nor fear that bankruptcy courts will decide payment priorities on an *ad hoc* basis in the context of agreements between other parties. In short, applying the Bankruptcy Code as written by Congress makes bankruptcy cases more predictable.

It ensures that creditors do not lose faith in the bankruptcy system because they believe that bankruptcy courts can deny them their statutorily-mandated payment priority on a case by case basis.

43.    Because the Stipulation and Settlement subverts the comprehensive priority scheme that Congress expressed in the Bankruptcy Code, the Settlement is not in the paramount interest of creditors and this court should deny approval of the Settlement.[7]

**B.    These Cases Should Be Converted Pursuant to Section 1112(b) Without Conditions**

44.    The Motion seeks what can be referred to as a "structured conversion". Among the provision of the "structured conversion", within five (5) business days after the DIP Agent's remittance of the amount for Chapter 11 professional fees under the Stipulation to the professionals, the Debtors shall submit to the Court an order converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code.

45.    Congress established three avenues for exit from a Chapter 11 case: plan confirmation, conversion and dismissal.  As the Motion alludes to the fact that the Debtors cannot propose a confirmable Chapter 11 plan, conversion and dismissal are the only feasible routes for the Debtors to exit these cases.

---

[7] ¶ 2.k. of the Stipulation also states the Pre-Petition Senior Secured Agent agrees to vote in favor of any chapter 7 trustee that is nominated by the Committee or its counsel and otherwise reasonably acceptable to the Pre-Petition Senior Secured Agent. However, these provisions contravene Section 702 of the Code which authorizes creditors in a chapter 7 case to request the opportunity to elect a trustee at the section 341(a) meeting provided that the creditor has, among other things  20 percent in amount of the eligible claims request the election and must not have an interest materially adverse, other than an equity interest that is not substantial in relation to the creditor's interest as a creditor, to the interest of creditors entitled to distribution

46.     Under Section 1112(b)(1), once cause is found this Court shall convert these cases to chapter 7 or dismiss them, whichever is in the best interests of creditors and the estates. Section 1112(b), by its express terms, contains no options for conversions with conditions that bind a Chapter 7 trustee and impinge upon that that Chapter 7 trustee's duties such as the Movants seek here. Simply put, upon a showing of cause, a case must simply be either converted or dismissed.[8]

47.     The Debtors' estates funds should be distributed pursuant to the priority scheme established by section 726 and not doled out first to professionals prior to conversion outside of the purview of this court and the Bankruptcy Code and thereafter made available to other creditors after conversion subject to a sharing agreement that the affected parties have not agreed or consented to. Under such circumstances, a straight conversion of the cases to chapter 7 cases serves the interests of all creditors far better than as set forth in the Motion.

48.     Among other things, a Chapter 7 trustee is subject to a bond conditioned on the faithful performance of his or her official duties.  *See* 11 U.S.C. § 322(a).  The chapter 7 trustee has certain statutory duties including the duties to (i) account for all estate assets; (ii) object to claims; (iii) make a final report addressing the assets liquidated, claims quantified, and distribution proposed; and (iv) file a final account after making the approved distribution.  *See* 11 U.S.C. § 704(a)(2), (5), (9). Further, the Chapter 7 trustee's performance of his or her duties

---

[8] Although section 1112(b)(1) also provides as a third option the appointment of a trustee under section 1104, it does not appear that a Chapter 11 trustee would accomplish anything that a Chapter 7 trustee could not do. If the Debtors are unable to propose a confirmable plan, it is unlikely that a Chapter 11 trustee would be able to do so.

would be subject to the U.S. Trustee's supervision, and he or she would be subject to removal upon a showing of cause. *See* 28 U.S.C. § 586(a)(3), 11 U.S.C. § 324(a).

49.     In drafting the Bankruptcy Code, Congress only provided two avenues for disbursing estate funds to unsecured creditors: pursuant to a confirmed Chapter 11 plan under section 1129 or pursuant to section 726(b) of the Code as identified in a chapter 7 trustee's final report under section 704. However, here the procedures proposed in the Motion create a third option: a "cafeteria style" conversion whereby the Movants select some parts of the Chapter 11 plan process (*e.g.*, compromise of estate claims, payment of professional fees, releases against Fifth Third Bank), even though a Chapter 11 plan cannot be confirmed, and then the selection of other parts of the chapter 7 process (*e.g.*, disbursement of funds to creditors), even though the parties seek conversion. The structured conversion adds features not provided for in either Chapter 7 or Chapter 11 *e.g.*, the payment and adjudication of creditor claims by someone other than the Court.

50.     This *a la carte* approach to bankruptcy relief violates the comprehensive and coherent Chapter 11 and Chapter 7 constructs established by Congress, and would, if adopted, establish a troubling precedent whereby parties feel emboldened to pick and choose favored portions of chapters 7, 9, 11, 12, 13, and 15 to cobble together all kinds of new styles of bankruptcy relief never contemplated by Congress. Because a Chapter 11 plan cannot be confirmed, these cases should be simply converted to Chapter 7 so that the remaining assets in the Debtors' estates can be paid to creditors in one of the ways specifically provided for by Congress. *See* 11 U.S.C. § 726(b).

51.     In addition, Section 105 does not grant this Court license to judicially create an option that, for reasons of expediency or even equity, circumvents the options provided by Congress in the Bankruptcy Code. Section 105(a) is not "a roving commission to do equity." *See United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986); *see also U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994) (Alito, J.) ("bankruptcy courts cannot use equitable principles to disregard unambiguous statutory language").

52.     The Movants are essentially asking this Court to make a policy determination about whether it is better to follow the Code's Chapter 7 option, or instead to create a new "structured conversion" option which requires a satisfaction of certain administrative expenses while dispensing with the statutory safeguards built into the Bankruptcy Code. However, "[a]chieving a better policy outcome . . . is a task for Congress, not the courts." *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13-14 (2000).

53.     The proposed structured conversion is also problematic in that it improperly modifies the claims objection procedure established by Congress. The chapter 7 trustee is a party-in-interest not only entitled, but statutorily empowered, to object to claims. *See* 11 U.S.C. § 704(a)(5). Yet under the procedures set forth in the Stipulation, after the payment of certain professional fees before conversion, unfunded professionals fees will be added in with other Administrative Claims which shall be paid, net of allowed chapter 7 administrative expenses[9], as follows:

---

[9] Under the Stipulation it is not clear if all chapter 7 administration will be paid ahead of other chapter 11 claims, if at all, as the Stipulation provides that the $125,000 to be turned over to the chapter 7 trustee is for the chapter 7 trustee and the chapter 7 trustee's professionals. For example, U.S. Trustee fees under 28 U.S.C. § 1930(a)(6), upon

(i) the first $1,000,000 thereof to holders of allowed chapter 11 administrative expenses of the Debtors on a *pro rata* basis, including the unfunded professional fees reference above;

(ii) second to holders of allowed priority claims against the Debtors on a *pro rata* basis;

(iii) third, to the extent of any remainder, all in accordance with the Bankruptcy Code's priority scheme; and,

(iv) thereafter, sixty-five percent (65%) thereof shall be distributed to the DIP Agent or the Pre- Petition Senior Secured Agent and thirty-five percent (35%) shall be distributed, free and clear of all liens, claims and other encumbrances, on a pro rata basis in accordance with the Bankruptcy Code's priority scheme, to holders of allowed unsecured claims of all types whether administrative, priority or general. Stipulation at ¶ 2.k.

54.    Here, the Chapter 7 trustee never gets an opportunity to review or object to certain Chapter 11 administrative claims while being compelled to adjudicate other claims without sufficient funds to do so.

55.    For all of the foregoing reasons, all creditors in these cases would be better served by the unfettered conversion to Chapter 7 than by a "structured conversion" that would allow the parties to prefer certain creditors without supervision by the U.S. Trustee or the Court, enable the Debtors to usurp judicial powers and functions, and permit estate assets to be held and distributed by an entity that is neither bonded nor accountable to the Court or the U.S. Trustee.

---

conversion, become entitled to same priority of treatment as Chapter 7 administrative expense claims. See, 11 U.S.C. §§ 503(b), 507, 726(b). See e.g., *In re Juhl Enters*., 921 F.2d 800, 803 (8th Cir.1990)*; In re Lochmiller Indus.*, 178 B.R. 241, 250 (Bankr.S.D.Cal.1995); *In re Metro Transp. & Health Referral, Inc.,* 165 B.R. 832, 833–34 (Bankr.N.D.Ohio 1994); *In re Darmstadt Corp*., 164 B.R. 465, 470 (D. Del 1994); *In re Ehrman*, 184 B.R. 362 (D. Ariz. 1995).

**C.      The Proposed "Structured Dismissal" is Not an Appropriate Use of Section 105(a)**

56.      The Movants base their Motion on Section 105(a). Under Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [*i.e.,* the Bankruptcy Code]." The words "'provisions of this title' simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them." *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000).

57.      Section 105(a) can only be used to carry out provisions of the Bankruptcy Code, not to graft new provisions onto the statute that Congress neither enacted nor intended. *See Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir. 1985) ("[S]ection 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law."). Equitable principles cannot be used to circumvent clear Congressional intent. *See, e.g., United States Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 300 (3d Cir. 1994); *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994). See also, *In re Combustion Engineering*, 391 F. 3d 190, 236-7 (3d Cir. 2004) (the Third Circuit, cited, among other cases, *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), and held that the general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code.

58.      The "structured conversion" proposed in the Motion is simply a cobbling of an otherwise impermissible plan confirmation and then rigged conversion none of which is contained in the Bankruptcy Code enacted by Congress. Section 105(a) cannot be used to create such a statutory "work-around since Congress enacted three specific ways to exit chapter 11, and

no court can legislate from the bench to create a fourth way. *See In re Combustion Engineering, Inc*., 391 F.3d 190 at 286 (equitable power afforded by Section 105(a) "cannot trump specific provisions of the Bankruptcy Code," "must be exercised within the parameters of the Code itself," and "is cabined by the Code"); *In re Kmart Corp*., 359 F.3d 866, 871 (7th Cir. 2004) ("the power conferred by Section 105(a) is one to implement rather than override"); *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1402 (9th Cir. 1995) ("Section 105 does not authorize relief inconsistent with more specific law."); *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993) ("[W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code.") (citing *In re Morristown & Erie R.R. Co*., 885 F.2d 98, 100 (3d Cir. 1989)).

59.     Section 105(a) does not afford bankruptcy courts "a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be." *See U.S. v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992). Courts carefully limit the circumstances in which Section 105(a) can be used; "Otherwise, there is a real risk that more particular restrictions found throughout the Code would amount to nothing, because the court could always use the residual equitable authority of § 105(a)." *See Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir. 2005). Thus, if Section 105(a) could be used to get around any problems observed with Sections 1112(b) and 1129 in certain situations, then those statutes "might as well not exist." *Id*. at 778 (analyzing section 105(a) in light of section 727(a) and Fed. R. Bankr. P. 4004). If a provision enacted by Congress does not adequately address a situation, courts in this Circuit cannot legislate a statutory work-around from the bench; rather, "an amendment of that provision should be sought from Congress." *See U.S. Trustee v. Price Waterhouse*, 19 F.3d at 142.

60.     In light of the foregoing, the Stipulation should be rejected because it requires this Court to erroneously apply section 105(a). In addition, several key terms and conditions of the Stipulation remain in flux, certain key exhibits or documents to the Settlement have yet to have been finalized or filed and the parties seek relief that contravenes the Bankruptcy Code.

61.     For all of the foregoing reasons, these Chapter 11 cases should be immediately converted to cases under Chapter 7 without all of the terms and conditions set forth in the Stipulation.

## CONCLUSION AND RESERVATION OF RIGHTS

62.     The U. S. Trustee reserves any and all rights, remedies and obligations found at law, equity or otherwise to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds or take such other actions as may become apparent upon further factual discovery.

THIS SPACE LEFT INTENTIONALLY BLANK

WHEREFORE, the United States Trustee respectfully requests that the Court deny the

Motion for the reasons set forth above and immediately convert these Chapter 11 cases to

Chapter 7 cases, and grant such other relief as may be appropriate and just.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

Dated: December 9, 2014             BY: *_/s/Richard L. Schepacarter_*
                                        Richard L. Schepacarter
                                        Trial Attorney
                                        U. S. Department of Justice
                                        Office of the U. S. Trustee
                                        J. Caleb Boggs Federal Building
                                        844 King Street, Room 2207, Lockbox 35
                                        Wilmington, DE 19801
                                        (302) 573-6491
                                        (302) 573-6497 (Fax)
                                        Email: Richard.Schepacarter@usdoj.gov